JUDGE PRYOR
delivered the opinion oe the court.
Lucretia Murphy, a little girl about five years of age, Avhose parents resided near the Louisville & Portland Canal, while crossing a bridge belonging to the Louisville & Portland Canal Company fell from the bridge into the water below and was drowned. The child at the time of the unfortunate accident was attempting to follow her sister, only two years older than herself, who had been sent on an errand by the mother to a grocery-store on the opposite side of the canal from Avhere they lived. This bridge was constructed by the company many years since, and, as the proof conduces to show, for its oavii convenience, but had been continuously used not only by the company but the public generally for nearly thirty years prior to the time the child lost her life. The company during this period kept the bridge in repair at its own expense *526 and permitted it to be used all the time as a public thoroughfare. An iron railing was erected on each side of this bridge as a protection to vehicles and travelers in crossing, and about three or four months previous to the accident several of the upright pieces of iron had been broken out, leaving an opening of some two and a half feet in the railing on the north side of the bridge, and from this opening (the weight of the testimony shows) the child fell into the canal. The act of incorporation imposes no duty on the company to build or keep in repair any bridges, but it was organized only to construct and operate a canal around the falls of the Ohio River, within this state. All the witnesses both for the appellee and appellant who were examined as to the condition of the bridge say “ that it was a good, sound, and safe bridge for all the purposes of travel by persons capable of exercising ordinary care and prudence.”
The present appellee, G. "W. Murphy (the father of the child), qualified as her administrator, and instituted the present action under the statute enacted and approved March 10, 1854, authorizing the personal representative of one whose life has been lost or destroyed by the willful neglect of another person or persons, company or companies, corporation or corporations, their agents or servants, etc., to institute an action and recover punitive damages for this loss of life, etc. A verdict and judgment thereon was rendered against the appellant for two thousand dollars. The petition alleges the existence of the corporation, the death of the child, and the administration upon her estate by the appellee. It is further alleged “that by reason of and in consequence of the willful neglect of said corporation, defendant, its agents, servants, and employees, in and about the management and control of the bridge belonging to said company, which bridge spans the canal used and controlled by said company, and extends from the lower terminus of what is called Bridge or Eighteenth *527 Street to a point nearly opposite what is known as Elm-Tree Garden, in the city of Louisville, Ky., and in and about the keeping of said bridge in proper repair, the life of his intestate, Lucretia Murphy, was lost and destroyed; wherefore he brings this suit and prays judgment,” etc.
A general demurrer was filed to this petition and overruled, to which an exception was taken, and is one of the errors complained of. The Code of Practice requires the pleader to state in ordinary and concise language the facts constituting the cause of action; and while the ancient forms of pleading are abolished by its provisions, still every fact necessary to enable the plaintiff in the action to recover must be alleged, and every essential averment required to make a declaration good at common law upon general demurrer must be made in the petition under our present system of pleading. The facts must be alleged, so as to enable the opposite party to know what is meant to be proved, and also that an issue may be formed in regard to the subject-matter of dispute, and to enable the court to pronounce the law upon the facts stated. (1 Chitty’s Pleading, 213.) The dry allegation of the facts in the petition, without setting forth the evidence of the truth of the statements made, is all that is requisite. (1 Chitty’s Pleading, 224.)
Although the gist of this action is the alleged willful negligence of the defendant in causing the death of Lucretia Murphy, other facts must be stated in order to maintain it. Negligence is a question of law as well as fact, and the mere allegation that A. lost his life by the willful neglect of B. is no such statement of facts as will enable the court to determine whether the party charged with the neglect is liable or not. The question then arises, does the allegation “that the defendant was the owner of the bridge and failed to repair it” authorize the court to assume that the plaintiff’s intestate had the right to pass over it, and also imply a duty on the company *528 to keep it in repair, or subject itself to damages by reason of this omission? Where the law imposes a public duty it is unnecessary in pleading to allege it, or where upon a state of facts presented a duty necessarily arises by implication it need not be stated.
In an action against an incorporated turnpike company for public use, an allegation that by reason of the willful negligence of the company’s servants and agents in failing to keep its bridge in repair the plaintiff’s intestate had lost his life, etc., would be good, as the act of incorporation requires that such duties shall be performed. In the present case the act of incorporation confers no right or power on the company to construct bridges for public use, and no duty to repair arises from the mere fact of ownership, unless this obligation is to be implied in every case where such an improvement is made by either individuals or corporations for their private purposes. We perceive no reason why in such a case, with an improvement erected for private use, an individual or corporation may not permit the entire decay of the structure without incurring any liability for injuries sustained therefrom by others, in the absence of an allegation of a special right' to pass, and an agreement on the part of the owner to keep it in repair. Certainly the right to the use of the way must be alleged, and it would be safer also to allege the agreement to repair.
In the case of Casey v. Mann (5 Abbott, N. Y.) it was alleged that the defendant had failed to keep a certain stairway attached to a building owned by him in repair, and the same had been provided by the defendant for the access of the residents of the premises to a back yard, and the plaintiff was entitled to its use; that the defendant as owner was bound to keep the premises in good repair, but had neglected and refused to do so, on account of which the plaintiff had sustained injuries (specifying them). It was held that this petition was bad on demurrer, as the averment that the *529 plaintiff was bound to repair was a mere conclusion of law, it appearing from the petition that the property ivas in the possession of the tenants, and not the owner.
The law will also presume negligence from the facts stated, as in the case of Chiles v. Drake (2 Met. 146), where the injury complained of was the killing of plaintiff’s intestate. It was alleged that he was shot and hilled by the willful neglect of the defendant. It was held on demurrer that the petition was good, as the facts alleged constituted willful negligence.
In this case it may be conceded that the bridge of the appellant was out of repair, and still the cause of action is not made out, unless it also appears either that the bridge was a part of a public thoroughfare under the control of the appellant, or, if a private bridge, that the appellee’s intestate had been licensed to travel over it under an agreement with the owners to keep the same in repair.
The petition is not defective for the reason insisted upon by appellant’s counsel, in failing to allege that there was no negligence on the part of appellee’s intestate contributing to the injury complained of. The latter was not compelled to anticipate the defense in the case, and for the purposes of pleading it is enough for each party to make out his case, “and matter which should come more properly from the other side need not be stated.” (1 Chitty, 222.) It is maintained, however, by the appellee that the answer filed cures any defect that may exist in the petition. The answer denies the negligence, and alleges “ that the defendant was under no obligation to the public to heep the bridge in repair, and that it constructed the same for its own private use and convenience.”
The failure of the appellee to allege that this was a public way, and that the appellant was compelled to repair the bridge, is supplied by the positive denial in the answer that such facts existed. In an action of trespass for taking a hook the plaintiff omitted to state that it was his hook, or in his possession. *530 The plea justified taking the hook out of plaintiff’s hands. The court held, on motion in arrest of judgment, that the omission in the declaration was supplied by the plea. (1 Chitty’s Pleading, 671.) In the case of Jewell v. Mills (3 Bush, 65) it was' alleged in the petition that the defendant, acting as constable, broke open and entered the plaintiff’s house, and demanded of the plaintiff her watch, but failed to allege that he took it from her possession. The answer denied that the watch was surrendered to the defendant, or that he took it away. It was held that this denial made an issue as to whether the watch was taken by the defendant, and the plaintiff was permitted to recover its value.
A defective pleading may also be aided by what is termed in pleading “ intendment after verdict.” The rule upon that subject is “that when there is any defect, imperfection, or omission, even of substance, in a pleading which would have been fatal on demurrer, yet if the issue joined be such as necessarily required on the trial proof of the facts so imperfectly stated or omitted, and without which it is not to be presumed the judge would direct the jury to give or that the jury would have given the verdict, such defect or omission is cured by the verdict.” (1 Chitty, 673.)
Applying these well-recognized rules of pleading to the present case, we have an issue formed by the pleadings upon which the verdict must be upheld, if sustained by the evidence; and having disposed of the questions made on the pleadings, this is the next and only essential question to be determined in the case.
We can not concur with counsel for the appellant that any such contributory negligence has been shown upon the part of appellee’s intestate or that of her parents as to prevent a recovery, if the facts are such as to make out a case of negligence under the statute against the company. The child, by reason of its tender years, can not be said to have been guilty *531 of any negligence. She was non sui juris, and her conduct, if negligent, must be regarded as the negligence of the parents, and not that of• the infant. Parents are the legal and natural custodians of their children, and when the children are so young as not to be capable of exercising any discretion their parents must exercise it for them. This control and care over children must be such as parents of ordinary prudence exercise. (Hartfield v. Roper, 21 Wend. 615; Darley v. Norwich Railroad Company, 26 Conn. 521; Mangam v. Brooklyn Railroad Company, 36 Barb. 459.)
The evidence in the case shows that the parents had been watchful and vigilant over the movements of their little ones, and the child had escaped from the house without any fault or negligence of theirs, and in no aspect of the case can they be held legally or morally responsible for their sad misfortune. It devolves upon the appellee, however, to show that the death of his intestate was caused by the willful neglect of the defendant or those in its employ. Willful neglect is equivalent to intentional wrong, or a recklessness evidencing the absence of all care and precaution for the safety and protection of others, and, as said by this court in the case of the Board of Internal Improvement of Shelby County v. Scearce, is quasi criminal. (2 Duvall, 576.)
If the bridge had become so much out of repair as to render it unsafe and dangerous for the ordinary purposes of travel, and the company, by its officers or agents, knew its unsafe and dangerous condition and neglected to repair it, and on account of which the appellant’s intestate lost her life, then the company could be said to have been guilty of willful negligence; “or if the defect was palpable and perilous, and such as any competent judge of such a structure could ascertain by ordinary vigilance, the presumption of knowledge and willful neglect might arise.” (Board of Internal Improvement v. Scearce, supra.) The evidence discloses the fact that the com *532 pany knew of this defect in the railing, but it is equally as well established by all the testimony, without any conflict whatever, that this defect was not dangerous to those passing over the bridge; but, on the contrary, it was a safe and sound bridge for all the ordinary purposes of travel by those who could exercise ordinary care and prudence in crossing it. The bridge was originally built as a matter of convenience in constructing the canal, or if not, for mere private purposes. No toll was ever charged by the company, or revenue derived from it. Conceding that the permissive use of it by the public for thirty years, with the repairs during that time constantly made by the company, created a right on the part of the public to demand of the defendant a continuance of this duty — viz., the repairing of the bridge until notice of its abandonment — still it ought not and can not be held to a greater degree of diligence than to keep the bridge in such repair as will answer all the ordinary purposes of travel. It certainly can not be urged that they are under any greater duty to the public than to keep this bridge in secure condition for public use, and particularly when no consideration, so far as this record shows, is received by the owners for this use of their property. Good faith does not require that it should be kept in such condition as to make it a place of safety for children, and when made to answer all the purposes of travel nothing more should be demanded of the company.
The appellant insists upon the facts proven that the court should have instructed the jury to find against the plaintiff; and as the case has been tried the third time in the court below, it is proper that this question should be disposed of. After a careful consideration of all the evidence in the case we feel compelled to say that there is an entire want of proof showing willful neglect on the part of the defendant, and we see no reason why the appellant’s motion for a nonsuit should not have been sustained.
*533 When the facts are conceded upon which the question of negligence is based it then becomes a question of law as to whether a case of negligence has been made out. If the charge is willful negligence, it being necessary to show this degree of negligence to recover in a case like this, and the evidence fails to show any, then there is no reason why a nonsuit should not be ordered. Actions for negligence are governed by the same rules with reference to the power of the court to grant a non-suit that other civil actions are, and it would be a useless waste of time, as well as trifling with the rights of litigants, for the court to permit a jury to deliberate upon a question of fact when the party making the complaint has failed by his proof to show any right of action. A court, however, should be careful not to invade the province of the jury upon an issue of fact; and where there is any proof conducing to sustain the cause of action the case should go to the jury. It is only in cases where the court is satisfied that the verdict can not be sustained by the evidence, and where the mind of the judge is entirely free from doubt upon this point, that such a right should be exercised.
In the case of Stuart v. Hawley (22 Barb. S. C. N. Y.), an action for negligence against the defendant for setting fire to his fallow, wood, and timber, by which the property of the plaintiff was destroyed, it was held that the plaintiff should have been nonsuited, and for that reason the judgment was reversed.
In the case of Calkins v. Boyer (44 Barb. 424) it was held that where the undisputed facts show that the defendant in an action for negligence was guiltless the case resolves itself into a question of law, and a nonsuit was adjudged. (See also Clark v. Foot, 8 Johns. 421; Livingston v. Adams, 8 Corven, 175; Radcliff’s ex’rs v. The Mayor of Brooklyn, 4 Comst. 195; 1 Hilliard on Torts, 125.)
The appellee, as the case is now presented, has failed to *534 show any right to damages. The peremptory instruction should have been given. Upon the return of the cause the parties, if they desire, should be allowed to amend their pleading.
For the reasons indicated the judgment is reversed, and the cause remanded with directions to award to the appellee a new trial, and for further proceedings consistent with this opinion.
The court appended the following to the above:
Since this opinion was rendered the attention of the court has been called to the provisions of chapter 10 of the Revised Statutes (1 Stanton, 223), which reads, “ that no right of action for personal injuries, etc., shall cease or die with the person injured or the person injuring, except actions for assault and battery, etc.” It may therefore be urged that as the present action was for willful negligence, if ordinary negligence was shown, the personal representative could recover. This would doubtless be true if any right of action existed on the part of the intestate. The common law conferred no right of action for an injury resulting in the loss of life, and the statute referred to, being merely declaratory of. the common law, gives no right of action to- the personal representative, when the intestate himself had none. For this reason the legislature enacted the law approved March 10, 1854 (Revised Statutes, 2 Stanton, 510), authorizing, by the third section of that act, the personal representative, where his intestate had lost his life by the willful neglect of a person, Company, or corporation, or their agents, to institute his action for the recovery of punitive damages. By the first section of the act the personal representative can not recover where the death was caused by ordinary neglect, except against a railroad company — that section applying solely to such corporations. This question is settled in a decision by this court in the case of the Louisville, Cincinnati & Lexington Railroad Company v. Seabolt, adm’r of Case.