KENTUCKY CENTRAL R. CO. v. FRANK McMURTY.

[Abstract Kentucky Law Reporter, Vol. 3—625, as Kentucky Central R.
R. Co. v. McMurtry.]

**Alleging Negligence in Damage Suit.**

In a suit against a railroad company for damages caused by
injury to a passenger, it is sufficient to charge that plaintiff was
on board the train as a passenger; that the company had under-
taken for compensation to transport him to his destination on its
road; and that its train ran off the track and injured the plaintiff
by reason of the negligence of those in charge of the train. This
constituted a cause of action, and it is not necessary to allege what
was done by the conductor causing the accident; that would be to
require the plaintiff to plead the evidence.

**Continuance on Account of Absence of a Witness.**

It is not error to refuse a continuance on account of the absence
of a witness, when the affidavit shows that the facts that he would
swear to if present are the same as sworn to by other witnesses,
and when such affidavit is read to the jury.

**Negligence of Trainmen.**

In a suit for personal injury caused by a wreck of a railroad train,
the company is liable where it is shown that the company's em-
ployes in charge of the train failed to exercise that degree of care
and skill in operating such train which experience has shown to be
reasonably necessary to the safe transportation of passengers, under
the usual and ordinary circumstances which experience has shown
will arise, which failure resulted in a wreck and the plaintiff's injury.

**Measure of Damages.**

In an action against a railroad company for damages on account
of injury to a passenger, the plaintiff has a right to compensation
for the injury sustained, and all such further injury, temporary or
permanent, that directly resulted from the injury complained of

APPEAL FROM SCOTT CIRCUIT COURT.

February 23, 1882.

OPINION BY JUDGE PRYOR:

The first and principal ground for a reversal is an objection to
the petition, or the admission of testimony under it by reason
of the failure to allege the facts upon which the negligence of
the appellee is based. It is averred that the injury to the plain-
tiff was caused by the negligence and carelessness of the agents

and employes of the defendant in running and operating its train; that by this negligence the train was wrecked, and the car in which the plaintiff was riding thrown from the track and the plaintiff's foot mashed, broken and permanently injured. The facts are distinctly alleged, both as to the wrecking of the train and the injury resulting therefrom. Whether the result of negligence as alleged was the issue of fact to be tried by the jury. If no statement of facts had been made from which negligence could have arisen the mere allegation of neglect would have been insufficient; but here the facts appear, and the burden was on the plaintiff to show the negligence of the defendant's employes.

The fact that plaintiff was on board the train as a passenger and the company had undertaken for compensation to transport him to his destination on its road, and that its train ran off the track and injured the plaintiff by reason of the negligence of those in charge of the train, constituted a cause of action, and if what was done by the conductor causing the accident is required to be alleged, it would require the statement not only of a cause of action, but the evidence by which the plaintiff expected to support it. The petition was therefore good, and fully sustained by the cases of *Chiles v. Drake,* 2 Met. (Ky.) 146, 74 Am. Dec. 406, and *Louisville &c. Canal Co. v. Murphy,* 9 Bush (Ky.) 522. The plaintiff could then show as proof of negligence that the employes were running a train with a greater load on some of the cars than they could bear; that the axle on one of the cars became so hot as to melt off, and its heated condition was known to the conductor, who, disregarding his duty, failed to use proper precautions or take any step whatever to avoid the danger. The burning box was noticed by many on and off the train, and the conductor was utterly indifferent to the suggestions made by others as to the danger. These were all facts that were proper to go to the jury under the issue made, for the purpose of establishing negligence on the part of the defendant.

The affidavit of the agent of the company as to what the absent witness would swear was read in evidence to the jury, and we do not see how his presence, on the facts of this record, could have been material to the appellant; nor are we prepared to say that the spirit of the code, much less its verbage, has been fol-

lowed by the parties below in the attempt to have the witness testify in person to the jury. Both the party and his attorney should state that "The testimony of the witness is important, and the proper effect of his testimony can not in a reasonable degree be obtained without an oral examination in court."

It was clearly competent for Garnett and others to state that the conductor was told of the heated condition of the box and his reply. All the parties were present on or at the train, and their attention directed to its condition. The subject of inquiry was whether the conductor knew of the danger, and when told what the danger was at the time the box was blazing, his response to the information given was competent to show the care and judgment, or the absence of either or both, in running this train.

The appellant offered to prove that, when informed of the condition of the box, the conductor gave it as his opinion that he could run it safely to Cynthiana. While we perceive no objection to the admission of the testimony, the affidavit of Frisbie as to what Martin would prove stated the belief of the latter that he could run the train to Cynthiana without risk. The entire proof indicated that such was the opinion of the conductor, and therefore the exclusion of this testimony or the refusal to permit the witness to answer the question could not have prejudiced the case. The statement went to the jury in the affidavit, and the entire proof conduced to show what the conductor thought of the danger.

We perceive no error in the instructions given for the appellee. The second instruction given at the instance of appellee required that those in charge of the train should possess that degree of skill, care and knowledge which experience in that department of business has shown to be reasonably necessary to the safe transportation of passengers under the usual and ordinary circumstances which a like experience has shown will arise, etc.; and by the fourth instruction the jury is required to find for the defendant, unless the plaintiff was injured by reason of the failure to exercise that degree of care and skill as defined in Instruction No. 2. The jury must, we think, have understood the law of the case, and that the defendant's liability depended upon the failure of the conductor to exercise the skill and care in the conduct of the train that one of prudence and caution

should exercise when placed in such a condition. He must exercise all the vigilance that a prudent man would exercise, skilled in the business, to insure the safe transportation of passengers.

Instruction "B" asked for by defendant was properly refused. It may have been a duty the conductor owed to the company and to the public to make the proper time at Cynthiana on the day the accident happened; yet if he saw the danger connected with the running of the train his first duty was to the passengers on board the train, and when as a prudent and cautious man he saw or should have seen the danger, it was incumbent on him to stop the train at stations before he reached Cynthiana, and in so doing to have avoided all danger.

As to the measure of damages, the right to compensation for the injury sustained, and all such further injury, temporary or permanent, that would directly result from the injury complained of, was the proper criterion; and all such further injury, temporary or permanent, which will result immediately or directly from the injury complained of.

The court proceeds, it is true, to tell the jury that the suffering of mind and body, and the expenses, as well as the results of the injury, if affecting the plaintiff's power and capacity to engage in the ordinary occupations of life, should be considered in estimating the damages. This instruction is sustained by the cases of *Covington St. R. Co. v. Packer,* 9 Bush (Ky.) 455, 15 Am. Rep. 725; *Louisville & Portland R. Co. v. Smith,* 2 Duv. (Ky.) 556; and *Parker v. Jenkins,* 3 Bush (Ky.) 587.

In the case of the *Louisville & Portland R. Co. v. Smith,* the words "exemplary damages" were objectionable in the instruction because the party was entitled to compensatory damages only, this court holding that the words "exemplary" and "punitive" convey the idea of punishment, where vindictive damages are required to be given by reason of the wrong complained of. Damages for wrongs like these are either compensatory or vindictive, and when the jury was told that the plaintiff was entitled to compensation it negatived the idea of vindictive or punitive damages, and the jury must have understood the instruction. The only objection to the instruction in regard to the measure of damages is, that this court, after defining the true criterion, then proceeds to particularize, by informing the jury as to what facts they are to consider in estimating the amount

of compensation to which the appellant is entitled in the event the company is chargeable with negligence. This character of instruction is found in almost all cases such as this, and the jury must have had the intelligence to know that compensation did not include punishment.

It may be and is argued that the finding evidences the fact as to the manner in which the instruction was regarded by the jury. The verdict was for $8,000. Some of the physicians who testified express the opinion that the appellee will be a cripple for life, and that the may be able to walk without the aid of crutches by the use of a stick. All concur that the injury is permanent, and must necessarily be so from the character of the injury. The appellee was a farmer by occupation, had expended or incurred medical bills amounting to seven or eight hundred dollars, and from the decided weight of the testimony can not reasonably expect to engage any more in manual labor. The quantum of recovery in such a case as this is with the jury, and while a verdict may be excessive, we are not prepared to say that the verdict here is so palpably wrong or excessive as to authorize this court to disturb it. The cases of *Maysville &c. R. Co. v. Herrick,* 13 Bush (Ky.) 122; *Louisville & N. R. R. Co. v. Fox,* 11 Bush (Ky.) 495; *Caldwell v. New Jersey Steamboat Co.,* 56 Barb. (N. Y.) 425, affd. 47 N. Y. 282, and *Shaw v. Boston &c. R. Corp.,* 8 Gray (Mass.) 45, sustain the verdict as to the quantum of damages rendered in this case. The rule is that the damages must be so unreasonable as at first blush to appear to have been influenced by passion or prejudice, before the court will set it aside. Such an injury as will impair the ability of the party injured to engage in active out-door business, or that renders him a cripple for life, might well demand at the hands of a jury, by way of compensation only, the amount of recovery here, and while under the facts of this case we might have fixed upon a less sum for compensation, the verdict is not so unreasonable as to require a reversal on the ground of excessive damages.

Judgment *affirmed.*

*Stevenson & O'Hara,* for appellant.

*L. M. Martin, J. Q. Ward, J. E. Cantrill,* for appellee.

[Cited, *Pittsburg, &c., R. Co. v. Schaub,* 136 Ky. 652, 124 S. W. 885, 136 Am. St. 273.]