Louisville and Nashville Railroad Company v. McCoy.

CASE 64—ORDINARY—NOVEMBER 6, 1883.

# Louisville and Nashville Railroad Company v. McCoy.

### APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

| | |
|---|---|
| 4r | 403 |
| 87 | 337 |
| 81 | 403 |
| 94 | 374 |
| 81 | 403 |
| 110 | 668 |
| e110 | 687 |
| 81 | 403 |
| 118 | 273 |
| 81 | 403 |
| f120 | 249 |
| 81 | 403 |
| 119 | 28 |
| 81 | 403 |
| 138 | 199 |
| 138 | 493 |

1. The 8th subsection of section 340, Civil Code, makes every error of law which may be committed, and properly excepted to during the trial, a cause for a new trial. Therefore, when the cause for a new trial is embraced by it, the particular ground or cause must be set forth in the written grounds, with such certainty that it may be known by a person of good understanding what is relied upon.

2. The fifth and seventh grounds relied upon for a new trial are sufficiently specific.

3. Ordinary care, in its general sense, is such care as is commonly exercised by the majority of the community, or by persons of ordinarily prudent habits.  But as the nature of the subject of the required care, and the danger to which it is exposed, are the main considerations in determining ordinary or any other degree of care in a given case, it results that what would be ordinary care in one kind of business would be gross negligence in another.

4. Ordinary care by the employés of a railroad company is that degree of care which a majority of men, of prudent and careful habits, would exercise under like circumstances to avoid injury to their own persons from the same risks which others undergo in obedience to orders, or by reason of their hazardous business.  It is going too far to require that degree of care which any of such persons would take of "his family" placed under like circumstances.

5. Neither intentional wrong, nor the implication of bad faith, necessarily belongs to the proper definition of gross neglect.  A person may be guilty of gross neglect without intending to do wrong to others, or to act in bad faith in the performance of a duty.  It is not equivalent to fraud or malice, although it may "furnish evidence of fraud" or may tend to show malice.

6. In the management of a railroad or any department thereof, gross neglect is the failure to take such care as a person of common sense and reasonable skill in like business, but of careless habits, would observe in avoiding injury to his own person or life under circumstances of equal or similar danger.

7. Whether contributory neglect be active or passive, it will not vary the rule if the action of the person injured results from an honest effort by him to perform some duty connected with his station, or thought to be so by some superior who directs him.

Louisville and Nashville Railroad Company v. McCoy.

8. In no case will the willful neglect of a party be excused by the contributing negligence of the person injured, unless the contributing fault is more than gross neglect, and amounts to a purposed injury which could not be avoided by a proper degree of care before or after its discovery.

9. If appellee, by his own negligence, contributed to such an extent to produce the injury to himself that, but for his negligence, it would not have happened, he has no cause of action unless appellant's agent, on managing the train, was guilty of willful neglect, or knew, or could have known by ordinary attention, of the peril in which appellee had placed himself, and knowing this, failed to observe reasonable care to avoid the injury.

ISAAC CALDWELL, LYTTLETON COOKE, AND WM. LINDSAY
FOR APPELLANT.

1. The court erred in its definition of ordinary care. It is evident that the care which an ordinarily prudent and careful man exercises in taking care of his family is not a proper test by which to determine whether or not he has been guilty of a social duty to a stranger.

2. The court confused gross neglect, as applied by the rules of the common law, to injuries not resulting in death, with that neglect denominated "willful" by our statute, providing for punitive damage in case of death produced by the culpable negligence of the party sued.

3. There is a marked distinction between gross and willful neglect. (Sceavir v. Board Int. Imp., 2 Duv., 576; Hansford v. Payne, 11 Bush, 382; 13 Ib., 636; Sherman & Redfield on Neg., 25; 50 Barbour, 39; P. & M. R. R. Co. v. Hoel, 12 Bush, 46.)

JAMES HARLAN, A. E. WILSON, KINNEY & KINNEY, AND J. T. O'NEAL FOR APPELLEE.

1. The particular errors complained of must be specifically pointed out in the grounds for a new trial, or they cannot be noticed by the court of appeals. (Conover v. Conover, 1 Ky. Law Rep., 398; Blythe v. Owens, 3 Ib., 328; Helm v. Coffey, 80 Ky. Rep., 176; Bank Columbia v. Bush, 3 Ky. Law Rep., 693; Slabe v. Sherman, 5 Bush, 206; L., C. & L. R. R. Co. v. Mahoney, 7 Ib., 235; McLain v. Dibble, 13 Ib., 297.)

2. Gross negligence is a much lower grade of negligence than that which is willful. Nowhere else except in L. & N. R. R. Co. v. Robinson, 4 Bush, 507, have we been able to find gross neglect defined as an intentional wrong.

3. The distinction between the two kinds of negligence is distinctly marked. (L. & N. R. R. Co. v. Felbern, 6 Bush, 580; 10 Bush, 680; 2 Duv., 557; 9 Bush, 532; 10 Ib., 265; Hansford v. Payne, 11 Ib., 382; Maysville & Lex. R. R. Co. v. Herrick, 13 Ib., 126; L. & N. R.

Louisville and Nashville Railroad Company v. McCoy.

R. Co. v. Wolfe, 80 Ky., 83; Tudor v. Lewis, 3 Met., 378; 14 Serg. & Rawle, 275; Bouv. Law Dic., 643; 32 Ver., 652; Sherman & Redfield on Neg., sec. 18.

4. This court will not reverse unless the error is clearly prejudicial to the party complaining. (Thomas and wife v. Tanner, 7 Mon., 51; Emmanuel v. Cocke, 6 Dana, 215.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

In the beginning collision of counsel renders it necessary to determine what questions are, by the grounds for new trial and assignment of errors, presented to the court for its decision.

According to section 340, Civil Code, there are eight general causes for granting a new trial. Some of these causes are stated in that section with sufficient particularity to be followed specifically in the written grounds which may be filed by a party, but others are so generic that the language of the Code, if literally pursued, would not enable the court to know, with reasonable certainty, what particular error was complained of. This is especially the case with the eighth subsection, which was intended " to cover all errors to which exceptions might be taken, not embraced by some one of the preceding seven subsections." (McLain v. Dibble & Co., 13 Bush, 298.)

That case holds correctly that the language of the eighth subsection, which authorizes a new trial for "error of law occurring at the trial, and excepted to by the party making the application," was the generalization of the law-makers, and not sufficiently specific to point out the particular error which might be intended by the written grounds. That subdivision makes every error of law which may be committed, and properly excepted to during the trial, a cause for a new trial. Hence, when the cause for new trial is embraced by it, the particular ground or cause must be

named in the written grounds with such a degree of cer-
tainty that a person of good understanding may know what
is meant.    Among other grounds for a new trial, the appel-
lant relied upon the following :

*Fifth.*  The court erred in law in refusing to submit to the
jury the questions propounded by defendant's counsel.

*Seventh.*  The court erred in the instructions to the jury.

These grounds are embraced by the eighth subdivision
of section 340 of the Code, and, as we think, are sufficiently
specific to indicate the errors of which the appellant com-
plains.    There were only three questions which appellant
asked to be propounded, and only two instructions which
were given by the court to the jury.    The questions and
instructions all relate to negligence, its degrees, character,
and by whom committed, and, it seems, should be consid-
ered together in order to understand the meaning of the
court below.    If more particularity were required in stating
grounds for new trial than the appellant has used, the courts
must finally become entangled in the uncertainty which
generally belongs to human expression, and as each case
is presented to different judges whose minds differ in the
understanding of the force or meaning of language, the
rule regarding the sufficiency of grounds for new trial will
be found to vary as much as their mental conceptions.
This vague and misgiving state of the rule, which should
be uniform and certain, as far as the subject will admit, was
never contemplated by the law-makers.    The object of the
motion and grounds for new trial is to call the attention of
the trial court to any error that may have been committed
at the trial, and to allow an opportunity, without the ex-
pense and delay of an appeal, of correcting it.    This being
so, all that is necessary in any case is to use such plain and.

Louisville and Nashville Railroad Company v. McCoy.

intelligible language in the grounds for new trial as indicates, points out, or shows to the court, with reasonable and ordinary certainty, the particular errors which are complained of, so as to enable the court, by the exercise of proper attention, to understand what errors are meant, and to reconsider the facts or law out of which they are alleged to have grown. Unreasonable particularity or technical accuracy in the description of the errors, is not required or practicable, either in the grounds for new trial or the assignment of errors.

To describe each error, with every particularity belonging to it, would swell the grounds for new trial, and the assignment of errors beyond their necessary or proper compass.

The law does not mean that the grounds for new trial shall contain a particular description of the errors relied on, but that the particular errors shall be simply pointed out or indicated in a common-sense way.

Often, and most generally, a few well chosen, substantive, or strong words referring to the subject, and the action of the court thereon, will point out or name the error or errors as well as the most lengthy description. The court could hardly fail to know what errors the appellant relied on by the grounds for new trial above quoted.

There is no objection to pointing out or designating each instruction and each question conceived to be erroneously given or refused, and this is certainly a safe course to pursue; but where the questions or instructions relate to the same general question and its various phases, it is nearly always important to take a view of the whole in order to understand the defects or omissions of any one of them, and a ground for new trial referring to them in the plural number is sufficiently specific. Where there are several

issues and various questions of a different nature, then, it may be, a general reference to the instructions or questions would not be specific enough to guide the mind of the court to the supposed error.  In such instances sharp practice, or an effort to embrace some error by an indefinite or too general ground, without descending to particulars, could be discovered with but little trouble, and cut off by the application of the rule in the sense we have attempted to explain it above.

The assignment of errors, however, comprehends several alleged errors, which were not alluded to in the grounds for new trial, and they will not, therefore, be considered.

But those quoted, and some other grounds which it will be necessary to mention in this opinion, are specified with ordinary and sufficient particularity, and will be examined.

This was an action brought by the appellee to recover damages of the appellant for personal injuries inflicted upon him by the alleged gross and willful neglect of its agents while he, as brakesman, was engaged, under their superior orders, in coupling the appellant's cars.   The evidence bearing upon negligence, and the extent of the injury, was conflicting, and of such a nature as required the court to instruct the jury upon the degrees of ordinary gross and willful neglect, and in the law of contributory negligence.

There were but two instructions given to the jury, and they were confined to the definition of ordinary and gross neglect.   As to other questions, the jury were directed to answer certain interrogatories, and in response to one of these, they fixed the appellee's compensatory damages at $7,593.50.   The instructions are in this language :

*First.* The court instructs that ordinary care is that degree of care which an ordinarily careful and prudent man usually

exercises under like or similar circumstances in taking care of himself, his family, or his property, or in the transaction of his business, when the same may endanger the safety of others.

*Second.* The court instructs the jury that gross negligence is that degree of negligence which indicates intentional wrong to others, or such a reckless disregard of their security or rights as to imply bad faith.

These instructions are both erroneous. Ordinary care, in its general sense, is such care as is commonly exercised by the majority of the community, or by persons of ordinarily prudent habits, placed under similar circumstances; but as the nature of the subject of the required care, whether animate or inanimate, capable of a high, low, or ordinary degree of self-preservation, or merely under the control of the person charged with the care, and the danger to which it is exposed, are the main considerations in determining ordinary or any other degree of care in a given case, it is clear that what would be ordinary care in one kind of business would be gross neglect in another. The law has a peculiar regard for human life, and as the business of conducting a railroad subjects it to extraordinary hazard, the general definition of ordinary care does not exhibit that care which the duty of those conducting railroads requires them to observe in its ordinary management. Ordinary care by them is that degree of care which a majority of men of prudent and careful habits would exercise under the same or like circumstances to avoid injury to their own persons from the same risks which others undergo in their service or in obedience to their orders, or by reason of the conduct of their hazardous business. But it is going quite too far to require that degree of care which any of such persons would

take of "*his family*" placed in like or similar circumstances. For it is against the laws of nature to expect a man of the greatest prudence to take the same care of an adult engaged in the dangerous employment of brakesman, which he has voluntarily taken upon himself, and agreed to perform with that degree of care upon his own part which ordinarily prudent persons of his class usually take in protecting themselves from danger, as he would of his own family placed in a like predicament. For what would not a husband and father hazard to protect his own family from the *ordinary* dangers to which a brakesman is exposed? Imagine his horror, himself controlling every movement of the train, were he to see any member of his family engaged in the dangerous and difficult office of coupling the cars. It was not a fair test. It was calculated to transport the jury into sentimental regions in search of the exalted degree of care which ordinary prudence dictates under such circumstances, and opened a wide realm in which the skillful advocate could "fling the reins to fancy." It is well that ordinary care in such cases should demand the same care that prudent persons take to avoid injury to themselves. But it ought not to be extended to their families, for no prudent man would place his family in every situation into which it might be his or the duty of others to go, although the duty might be attended with more or less danger, or even performed with safety. If railroad managers or agents take the same care of others that prudent and careful men usually take of their own persons in like peril or under similar circumstances, they should be considered as having taken ordinary care.

Neither intentional wrong nor the implication of bad faith necessarily belongs to the definition of gross neglect. A person may be guilty of gross neglect without intending to

do wrong to others, or to act in bad faith in the performance of a legal or social duty.   Gross negligence is not equivalent. to fraud or malice, while it may "furnish evidence of fraud," or tend to show malice.   (Tudor v. Lewis, &c., 3 Met., 385.)   And in order to make out gross neglect, it is not necessary to show that it is of such a degree as indicates. intentional wrong to others, or such a reckless disregard of their security or rights as to imply bad faith.   The definition given in instruction No. 2 accords with the Roman civil law, and with the definition of gross neglect found in Louisville and Nashville Railroad Company v. Robinson, 4 Bush, 509; but it is not sustained by other cases decided by this. court, and it is contrary to the common law.   (Sherman &. Redfield on Neg., secs. 3 and 37; Hansford v. Payne, 11 Bush, 382; 10 Bush, 679.)

So much of the case of L. & N. R. Co. v. Robinson as holds that "gross neglect is either an intentional wrong, or such a reckless disregard of security and right as to imply bad faith, and therefore squints at fraud, and is tantamount to the *magna culpa* of the civil law, which, in some respects, is *quasi* criminal," is overruled, because it confuses elements. of willful neglect, and substitutes them for those of gross. neglect.   There is some difficulty in laying down a definition of gross neglect which will include every state of facts on which the charge may be sustained, and exclude every other that cannot authorize the deduction.

Sherman & Redfield, section 18, say: "Gross negligence is the want of even slight care and diligence."

This court, in Maysville & Lexington R. R. Co. v. Herrick, 13 Bush, 127, said that "punitive damages were recoverable if the proof showed that the company failed to use such diligence in keeping its railroad bridge in repair as careless.

and inattentive persons usually exercise in the prosecution of the same, or of business of like character;" that "the absence of slight care in the management of a railroad train, or in keeping a railroad track in repair, is gross negligence;" and that it was not necessary to show the absence of *all* care, reckless indifference or intentional misconduct, to make out gross neglect.

These alleged definitions of gross neglect are rather the statement of instances showing gross neglect than a definition embracing every state of facts constituting such neglect. It is certainly true, in the management of a railroad, that the absence either of all care, of the loosest degree of care, or of slight care, is gross neglect; but it does not follow that the presence or exercise of slight care in the general sense and ordinary application thereof, in matters of little or no peril to life, negatives the existence of gross neglect charged in the management of a railroad where human life is constantly in more or less danger.

Slight care in cases of this character should be of a higher grade or greater care than is required in an ordinary or less hazardous business. And while we agree with the doctrine in the M. & L. R. R. Co. v. Herrick, that if the proof showed the company failed to use such diligence as *careless and inattentive persons usually exercise* in business of like character, punitive damages were recoverable, still we do not think the standard of the test in that case is strict or broad enough for any case possible to arise. We think, in view of the nature and hazard of the business of railroad management, that slight care in such business is more than careless and inattentive persons usually exercise in like business. Whatever may be the scope of those terms, they are not explicit in their comprehension, and may mislead, if

Louisville and Nashville Railroad Company v. McCoy

adopted as a standard, in ascertaining the existence or non-existence of slight care, and consequently the presence or absence of gross neglect, for which punitive damages may be given where death does not ensue.

In the management of a railroad, or any department thereof, gross neglect is the failure to take such care as a person of common sense and reasonable skill in like business, but of careless habits, would observe in avoiding injury to his own person or life under circumstances of equal or similar danger to those which may be under investigation.

There is an allegation of willful as well as gross neglect in appellee's petition, and as the appellant complains that the law of contributory negligence was not correctly expounded to the jury, it becomes necessary to define willful neglect. According to the cases of Lewis, 10 Bush, 680; Jacob, ibid, 263; Murphy, 9 Bush, 531; Scearce, 2 Duvall, and Claxton, 13 Bush, willful neglect, in the statutory sense, implies actual malice or anti-social recklessness, and may be equivalent to fraud. In general, willful neglect is the intentional failure to perform a known or manifest duty in which the public has an interest, or which is important to the person injured, either in preventing or avoiding the injury to him. Where this high grade of negligence may be proven against a party, he must answer in damages, notwithstanding the contributory fault of the person injured by it. This was the rule enunciated, in substance, in the cases found in 7th Bush, p. 235; 8th Bush, 167. It is the general rule, while there are exceptions to it which may often arise. For instance, where the person injured, knowing of the neglect of the party charged, voluntarily, with the intention of causing his own injury, placed himself where the

injury could not be avoided, either before or after the discovery of his condition. In such cases no recovery should be had; but where the neglect is willful, the injury wanton, malicious, or immediately intentional, contributory negligence of the person injured should not excuse, unless of some such peculiar character as indicated in the exception noted above.

Whether the contributory neglect be active or passive, it will not vary the rule if the action of the person injured results from an honest effort on his part to perform some duty connected with his station, or thought to be so by some superior who directs him to discharge that duty. And in no case will the willful neglect of a party be excused by the contributory negligence of the person injured, unless the contributing fault is more than gross neglect, and amounts to a purposed injury, which could not be avoided by the exercise of a proper degree of care by the party charged with the neglect before or after its discovery. This rule seems to be absolutely necessary to the protection of human life, and it should be recognized wherever the proof will authorize it, whether the action is based upon willful neglect or not. Sherman & Redfield, section 37, say, "where the defendant has willfully committed an injury, the rule" of contributory negligence does not apply.

In the case of The Tonawanda Railroad Co. v. Munger, 5 Denio, 267, it is said: "Injuries inflicted by design not thus excused. A wrong-doer is not necessarily an outlaw, and may justly complain of wanton or malicious mischief." And we think, as held in that case, where an injury is effected, or results from an act which is either criminal or calculated to endanger human life, and it is the result of willful neglect of a party, he should not be excused by

the contributory negligence of the person injured, unless under circumstances similar to those indicated. (23 N. Y., 344.) But where the proof shows gross or a less degree of neglect, the law of contributory negligence should be given to the jury, if there be any evidence on which to base it.

Question No. 2, asked by appellant, was too broad. It is not necessary, in order to render appellant responsible, to be shown that it could not, after discovering appellee's condition, have avoided the injury by proper care. For it may be that appellant's own negligence rendered it impossible for it or its agents to discover any fault of appellee before he was injured, or to take any care whatever to protect him from his own negligence, or that the appellant's agents took no care to keep advised of appellee's acts, or to become aware of any negligence he may have been guilty of. We do not understand the law to be that the party charged with gross neglect is relieved from responsibility in every case by the contributory negligence of the injured party, unless he *had actual notice* of the injured party's fault in time to protect him. If the appellee, by his own negligence, contributed to such an extent to produce the injury to himself, that but for his negligence it would not have happened, then he has no cause of action, unless the appellant's agents, in managing and coupling the train, knew, or could have known by ordinary attention, of the peril in which appellee's negligence had placed him, and failed to observe reasonable care to avoid the injury which followed. (Sherman & Redfield, sections 24, 25; Hoehl's case, 12 Bush, 46, and cases there cited.)

The evidence in this case, which we have refrained from reciting, because a new trial must be ordered, was such as to authorize the court to instruct the jury on the law of con-

tributory negligence as above defined. As to the question of excessive damages raised by appellants, it might be imprudent to discuss it in the light of the evidence, and in contemplation of a new trial. It is proper, however, to decide that exemplary, vindictive, or punitive damages may be given where a personal injury has been caused by gross negligence, but nothing less, in the management of railroad trains. (Herrick's case, 13 Bush, 127; Dill's case, 4th Bush, 593.) As the evidence may present a different state of case at another trial, we will not consider this point further, or go into the question as to how much or when compensatory damages are proper. We have considered questions in this opinion on which alone we would not have based a reversal, but as the record involved them, and the whole law of the case should be understood as to both sides, we have ventured upon their consideration.

Wherefore, for the errors indicated to appellant's prejudice, the judgment is reversed, and cause remanded, with directions to grant a new trial.