## Evans et al. v. Williams et al.

Oct. 6, 1942.

C. R. Luker for appellants.

A. T. W. Manning for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE PERRY—Affirming.

The appellants, L. R. Evans and J. H. Evans, here appeal from a judgment sustaining a general demurrer of defendants (here appellees) to their petition as insufficient in its statement of facts to constitute or support a cause of action and the court's further order dismissing the petition upon plaintiffs declining to amend.

The sole question presented upon the appeal for our decision is the sufficiency of the factual allegations of the dismissed petition to constitute or support a cause of action.

In June, 1938, the appellees leased to appellants for the period of ten years a boundary of coal land, consisting of two tracts, lying on the waters of Raccoon Creek in Laurel county, Ky. The first tract of this boundary, lying at its west end, contains about three acres and is described as being a part of what is known as the George McCracken land, while the adjoining tract, No. 2, of the boundary is described as being what is known as the old Pittsburg Coal Company land, containing some 300 acres. Tract No. 2 lies eastwardly of and bordering on tract No. 1.

A copy of this lease, which was upon its execution duly recorded, is filed as an exhibit with and made a part of the petition in this action, based upon the lease contract and seeking damages in the amount of $500 for appellees' alleged breach and violation of the contract.

The material portions of this lease provide: (1) that the appellant lessees, Evans and Evans, should pay to the appellee lessors, Williams and Edwards, rent on a royalty basis of 20c per ton for all coal mined going over a 1¼'' screen, such royalty payment to start August 1, 1938 and be paid weekly for all coal mined the preceding week or since the last payment; (2) that the lessees would at all times work the mines to be operated on said premises continuously in a skillful and workmanlike manner and would not remove any stumps or pillars without the consent of lessors; (3) that lessors might use timber for mining purposes; and (4) that the lessees would make no assignment of the lease and that any attempt to do. so would terminate the lease; and, further, that if lessees should fail to pay any or all royalty when due or to comply with all the agreements contained in the lease, then the lease, at the option of lessors, would be forfeited and terminated, and also, that if the mine should be abandoned by lessees for any cause not beyond their control, the lease would be forfeited.

The lease contains no express covenants protecting lessees from interruption or interference with their quiet enjoyment and use of the leased premises nor any express covenant or representation that the lessors are the legal owners of the leased premises.

However, plaintiff's petition, seeking recovery of damages for the lessors' alleged violation of their lease contract, and purporting to set up the provisions of this lease, alleges that at the time defendants leased said

property to plaintiffs, they represented to them that they were owners of and in possession of each of the two tracts leased them and that pursuant to said contract or lease, these plaintiffs went on tract No. 1 of the leased boundary (it being a part of the George McCracken land) and proceeded to open up the mine and worked for some three months on the preparatory work of driving an entry through the 3 acre (No. 1) tract, timbering and laying tracks therein, etc., to reach and operate the coal lying in the adjoining Pittsburg Coal Co. tract, No. 2; that upon the completion of the preparatory work and just as they were beginning to mine and move the coal from the adjoining tract, as stated, they were stopped by Bill McCracken and other of the McCracken heirs, who claimed to be the owners of a part of the George McCracken land (tract No. 1 of the lease), from operating said mine; that they blocked the roadway they had constructed to tract No. 2 and refused to allow them to operate the mine.

The petition further alleges that they then, upon the McCrackens' alleged interference and disturbance of them in their possession and quiet use and enjoyment of the leased premises and in conducting the mining operation thereon, for the first time learned "that the defendants, Williams and Edwards, were not the owners of the George McCracken tract of land, as they had represented they were," and that they at once, upon being stopped by the McCrackens from "operating coal from (or through) the said George McCracken tract," went to defendants and notified them of their having been thus stopped and their mining operation interrupted by the McCracken heirs, who claimed the land and coal, when the defendant lessors thereupon promised and agreed to buy the McCracken land so plaintiffs could operate coal from same and continue their work, but that defendants failed and refused to perform their promises or in any way to arrange so that plaintiffs could continue their coal operation, and that defendants, in further violation of their agreement, sold the Pittsburg Coal Company tract, which they had leased appellants, to some other party or parties to them unknown.

Plaintiffs alleged that "they at all times have been ready and willing to operate coal from said mine," if the defendants would put them in possession of it or would enjoin or prevent the McCrackens from interfer-

ing with their mining operation, but that, despite plaintiffs' repeated demands that defendants give them some relief by injunction or suit, they have continuously failed and refused to do so. Further they allege that by reason of the above, defendants have violated their contract and that they, having spent some three months in opening and preparing said mine for operation, laying tracks, etc., without being able, by reason of the McCrackens' interference with them, to mine any coal from said mine or receive any pay for the work done or for the materials furnished by them, or receive any royalty on coal they would have mined had they not been stopped, have been damaged in the sum of $500, which damages they allege are the proximate result of the defendants' failure in carrying out their written contract or lease with them.

Wherefore, they concluded their petition with a prayer for judgment against the defendants in the sum of $500, for their costs expended and all other proper relief.

To this petition defendants filed a general demurrer, challenging the sufficiency of its factual allegations to constitute or support a cause of action.

Approaching now our task of determining whether or not the chancellor's sustaining of the demurrer to the petition, on the grounds that it failed to state a cause of action, was proper, it is to be observed that the rule laid down in Section 90, Civil Code of Practice, for determining the sufficiency of the allegations of a petition to state a cause of action is that:

> "The petition must state facts which constitute a cause of action in favor of the plaintiff against the defendant, and must demand the specific relief to which the plaintiff considers himself entitled; * * *."

In the case of Louisville & P. Canal Co. v. Murphy, 72 Ky. 522, 9 Bush 522, this court, in interpreting this section of the code and in setting out the character of a petition and its allegations which would meet this code requirement, in substance said that the petition must state in ordinary and concise language the facts constituting the cause of action, and every fact necessary to enable the plaintiff to recover must be alleged, and every essential averment required to make a declaration good at common law must be stated. The facts must be

so alleged as to enable the opposite party to know what is meant to be proved, and also that an issue may be formed in regard to the subject matter in dispute and to enable the court to pronounce the law upon the facts as stated.

In Section 20, page 417, 1 Am. Jur., the basic principle of the rule is stated to be that:

"The essential elements of a good cause of action are the existence of a legal right in the plaintiff, with a corresponding legal duty in the defendant, and a violation or breach of that right or duty with consequential injury or damage to the plaintiff, for which he may maintain an action for the recovery of money damages or other appropriate relief."

Further it is said (Section 21, Id.) that:

"The existence of a legal right is, accordingly, an essential element of the cause of action, inasmuch as a plaintiff must recover on the strength of his own case instead of on the weakness of the defendant's case, *since it is his right, instead of the defendant's wrongdoing, that is the basis of recovery.*"

As said in 1 Am. Jur., Section 24, page 419:

"A cause of action arises from the injury or wrongful act which results from an invasion of the plaintiff's primary right through some violation of a duty imposed, either by voluntary contract or by positive law, upon the defendant in favor of the plaintiff."

The sufficiency of the petition, therefore, depends upon the facts pleaded, if those facts entitled plaintiff to any relief, either legal or equitable.

Such being the essential elements of a good cause of action, we will now consider the question of whether the allegations of the dismissed petition were of such certainty and definite character of factual statement as were sufficient upon demurrer to establish such required primary right in the plaintiffs as against the defendants; or, that is, whether they met the code requirement of so stating the essential and material facts as to constitute a good cause of action in favor of plaintiffs and against the defendants. It is to be noted that the petition alleges and sets out that the lease, for a term of years, of the mining property in question was made and

entered into by plaintiffs and defendants, without containing any express covenants representing lessors as being the legal owners of the property or any representations as to the lessees' quiet and undisturbed use and enjoyment of the leased premises or protecting them against interference with their peaceful use and possession of it throughout the lease term.

However, it does not follow, because of the lease's containing no express representations or covenants as to the lessors' title, or for peaceful enjoyment, that implied covenants did not arise out of appellees' leasing of the land in their favor. The rule as to this is thus stated in 32 Am. Jur., Section 268, page 252:

"Although in conveyances of land covenants of title as a rule will not be implied, and there is authority to the effect that a covenant on the part of the lessor, for title, will not arise from the relation of landlord and tenant, * * * as a general rule the use, in a lease of land, of the term 'demise', 'grant,' or 'let' is deemed to imply or import a covenant, on the part of the lessor, of good right and title to make the lease, and there is authority that the relation of landlord and tenant is sufficient.

"With regard to an implied covenant of quiet enjoyment in a lease, the rule now established by the great weight of authority is that the ordinary lease of realty, if valid, and executed by a person capable of making such a covenant, *raises an implied covenant that the lessee shall have the quiet and peaceable possession and enjoyment of the leased premises, so far as regards the lessor, or anyone lawfully claiming through or under him, or anyone asserting title to the leased premises superior and paramount to that of the lessor,* unless there is some express covenant of a more limited character inconsistent with a judicial covenant of quiet enjoyment * * *. There is practically no dissent that the use of the word 'demise' in a lease imports a covenant for quiet enjoyment; and the words 'grant,' 'let,' or 'lease' have been held to have the same effect of creating an implied covenant for quiet enjoyment as has the word 'demise.' * * * 62 A. L. R. 1262." (Italics ours).

See, also, the case of Denny v. Marksbury, etc., 15

Ky. Law Rep. 400, wherein the following rule, in harmony with the above, is stated:

"In leases of real property the law not only implies a covenant on the part of the landlord for quiet possession against paramount title, *but against such acts on his part as destroy the beneficial enjoyment of the lease;* and in actions for a breach of this covenant, the lessee can recover such damages as legitimately and directly arise from the breach, but nothing more." (Italics ours).

Further on this point and to like effect see New Domain Oil & Gas Co. v. McKinney et al., 188 Ky. 183, 221 S. W. 245; also Section 252, Taylor on Landlord & Tenant.

See also the rule as to the scope of express or implied covenants as stated in Section 271, page 255, 32 Am. Jur., where it is said:

"It has been held that where the law implies a covenant for quiet enjoyment from the character and terms of a lease not containing any express covenant in this respect, the scope of the implied covenant should be equally extensive with that of an express covenant. Mayor, etc., of City of New York v. Mabie, 13 N. Y. 151, 64 Am. Dec. 538; 62 A. L. R. 1265.

"The covenant is apparently construed to obligate the lessor to protect the lessee at least from direct or physical interference with the latter's use and enjoyment of the premises, so far as concerns the acts of the lessor and those claiming through or under him, or anyone lawfully asserting a paramount hostile right. The question of indirect interference is not so clear."

It thus appears that the general and settled rule as to the scope of the implied covenant, arising out of the relation of landlord and tenant, is to be construed as obligating lessor to the extent of protecting his lessee from interference with the latter's use and enjoyment of the premises only so far as concerns the acts of the lessor and those claiming through or under him, or anyone lawfully asserting a paramount title.

As to the restrictive responsibility of the landlord, the allegation of plaintiffs' petition, that they were dis-

turbed and interfered with in their mining operation, was insufficient in that it failed to allege that the McCrackens were authorized by or acting with the sanction of the landlord (the defendants) in their disturbance of plaintiffs or were, in stopping the mining operation, asserting their hostile rights as the holders of a paramount title to the leased property.

The allegation of the petition as to this is only that plaintiffs *had learned* in some way or from some source, not stated, that the McCrackens were the owners of the 3 acre (No. 1) tract of land. Such allegation being but a conclusion of law as to the question of their ownership, it clearly did not constitute a proper pleading as to the fact of their paramount ownership or one suffiicient to support the inference that the McCrackens were constructively evicting the plaintiffs and interfering with their possession as holding a paramount title to the premises in question, for which lessors would be liable in damages, for breach of the implied covenants of their lease, upon which plaintiffs' right to recover depended.

Such essential facts relied on should be directly, particularly and positively alleged as facts, rather than improperly pleaded by way of argument, inference, conclusion or belief. Patterson v. Caldwell, 58 Ky. 489, 1 Metc. 489.

Defendants' general demurrer to the petition admitted only the truth of such facts as were well pleaded and every allowable and proper deduction therefrom (Norman, Auditor, v. Kentucky Bd. of Mgrs., etc., 93 Ky. 537, 20 S. W. 901, 18 L. R. A. 556), but did not admit the truth of the allegations which were but conclusions of law. Calloway v. Bryant, 204 Ky. 160, 263 S. W. 687.

Therefore, it is our conclusion that the allegations of the petition, pleading that the plaintiffs "had learned" that their lessors were not the owners of the coal land leased them and that they had been disturbed in their possession by the McCrackens when claiming the land but without stating they held a paramount title or were holding title under their lessors, or that in committing their wrongful conduct complained of they were acting under the authority or with the sanction of their lessors, failed to state a cause of action, in view of the rule that the landlord is not to be held responsible for the wrong-

ful act of third parties or trespassers upon the possession of his tenants, but only where they are being evicted from or disturbed in their possession by those either holding paramount title or else acting under the authority of the landlord is the duty imposed upon the lessor of protecting his tenants, under the implied covenant arising out of the relation of landlord and tenant, against interference or eviction from their possession and use of the leased premises.

Such being our conclusion, that the allegations of the petition were here insuffiicient to plead the essential facts upon which plaintiffs must rely for recovery, it follows that the learned trial court properly sustained the demurrer to the petition as being insufficient to constitute or state a cause of action and dismissed the petition.

Judgment affirmed.