Dorothy HOLLOWAY and Blondale Harris, Movants,

v.

Charlie Neil KRUGER and his wife, Evelyn Kruger, Respondents.

Supreme Court of Kentucky.

Dec. 20, 1984.

B.M. Westberry, Westberry & Roberts, Marion, for movants.

Joseph S. Freeland, Paducah, for respondents.

GANT, Justice.

Pauline Grassham Kruger, mother of respondent Charlie Neil Kruger, was the owner of certain properties in Livingston County, including the mineral rights under a 340-acre tract known as the "McGuire" or "Want Hill" tract. In 1959, she conveyed these mineral rights, among others, to the movants, Dorothy Holloway and Blondale Harris. In 1967 and 1969, Pauline and the respondents attempted, by unrecordable and unilateral instruments, to cancel the conveyances, which cancellations were held ineffective by the trial court.

In 1968, Pauline Kruger and the respondents leased the mineral rights under this 340-acre tract to certain third parties, which lease was subsequently assigned twice, the last being to Industrial Minerals. This company commenced removing valuable sandstone by strip mining methods, and between 1971 and 1978 removed and sold over 195,000 tons of marketable ore for a total in excess of $900,000.

In October, 1976, while movants were examining the records of the Livingston County Clerk, in the company of and at the invitation of respondent Charlie Neil Kruger, the lease to Industrial Minerals was discovered. A visit to the property disclosed that the full-scale mining operation was in progress and had been for some time. Respondents and Industrial Minerals were immediately notified of the ownership by the movants of these minerals. However, strip mining continued, and some $266,000 in ore was removed after notification until removal was terminated by an injunction issued in the lower court.

The trial court found there was a trespass by the Krugers and by Industrial Minerals limiting recovery to the five-year period next preceding the filing of the law suit on June 30, 1977, pursuant to KRS 413.120.

The trial court further found, in effect, that these parties were innocent trespassers from June 30, 1972, to October, 1976, and ordered payment of reasonable royalty of $15,000 a year for that period of time. The court further found that, based upon the evidence, the Krugers and Industrial Minerals were willful trespassers after October, 1976, and assessed damages against them as the value of the minerals removed and sold in the amount of $266,300.40, for a total judgment of $330,050.40.

On appeal, the Court of Appeals reversed the trial court, holding (1) that a mineral lease is the equivalent of a quitclaim deed, without any warranty whatsoever, so the lessor could not be a willful trespasser; and (2) that the lessor could be liable only for the royalties actually received and not for the reasonable royalties as awarded by the trial court. We reverse.

█ On the second point, it has long been the law that the measure of damages for innocent trespass is "reasonable royalties" if it be shown that the actual royalties did not meet the standard of reasonableness. *See Hughett v. Caldwell County*, 313 Ky. 85, 230 S.W.2d 92 (1950).

█ Relating to the categorization of a mineral lease as the equivalent of a quitclaim deed, this, quite simply, is not the law. Although a horse and a cow may both be quadrupeds, they are not the same animal. It has long been held that, even though a lease contains no express covenant or representation of the lessor's title or for peaceful enjoyment, an implied covenant therefor will arise. The court, in *Evans v. Williams*, 291 Ky. 484, 165 S.W.2d 52, 55 (1942), adopted the following language:

> With regard to an implied covenant of quiet enjoyment in a lease, the rule now established by the great weight of authority is that the ordinary lease of realty, if valid, and executed by a person capable of making such a covenant, raises an implied covenant that the lessee shall have the quiet and peaceable possession and enjoyment of the leased premises, so far as regards the lessor, or

anyone lawfully claiming through or under him, or anyone asserting title to the leased premises superior and paramount to that of the lessor, unless there is some express covenant of a more limited character inconsistent with a judicial covenant of quiet enjoyment ...

> In leases of real property the law not only implies a covenant on the part of the landlord for quiet possession against paramount title, but against such acts on his part as destroy the beneficial enjoyment of the lease ...

*See also New Domain Oil and Gas Company v. McKinney*, 188 Ky. 183, 221 S.W. 245 (1920).

Additionally, rather than containing an express covenant of a limited character, as mandated under *Evans, supra*, the lease in question contains the following provision: "The Parties of the First Part (Krugers) declare that they have the sole and exclusive right to lease, sell or demise the mineral rights to the premises hereinafter described and as provided for in this instrument...."

Under the status of this action, in addition to reversing the Court of Appeals, we must remand this case to it for consideration of those points raised in the original briefs to that court, which points did not include any analogy to a quitclaim deed.

The opinion of the Court of Appeals is reversed and this case is remanded for further proceedings consistent herewith.

All concur.