CASE 104—NEGLIGENCE—MARCH, 1884.

## Bransom's adm'r v. Labrot, &c.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. As a general rule, the owner of land may retain to himself the exclusive use and occupation of it; but as property in lands depends upon municipal law for its recognition and protection, the use and enjoyment of it are subject to conditions imposed for the welfare and rights of others.

2. Appellees had possession and control of an unfenced lot in Frankfort, upon a public street, on which they had stacked a large quantity of lumber in one large and irregular pile, so negligently and badly done that as the decedent, an infant, was playing near it, one of the timbers fell upon and killed him. Held:

3. That it was the duty of appellees, in placing their lumber upon the lot, to do it in such manner as to make it reasonably safe, and secure against injury to children coming on the lot and near the lumber. Failing to do so, appellant is entitled *prima facie* to his action against appellees for negligence.

JOHN L. SCOTT FOR APPELLANT.

The petition not only charges wilful neglect in general terms, but goes on to specify and detail every fact that goes to make wilful negligence.

The only question is, whether section 3 of chapter 57, General Statutes— title, Injuries to Person or Property—is operative.

Appellees undoubtedly had the right to stack their lumber upon their own lot, but in doing so, knowing that it was open to all, it was their duty so to stack it as to make it safe against injury to others. (Osborne v. Morgan, July No., 1881, Am. Law Reg.; Masterson v. N. Y. Cent. R. R. Co., Am. Law Review, July, 1881; Metzer v. Herman, Sup. Ct. N. Y., 1881; Baber v. Alleghany Val. R. R. Co., Albany Law Jour., July, 1881; Addison on Torts, 2 vol., 1315, vol. 1, 495; Lou. & P. Canal Co. v. Murphy, 9 Bush, 522; 15 Wall, 657; 22 Kansas, 686.)

W. LINDSAY FOR APPELLEE.

There is no pretence that the decedent was on the lot upon the invitation of appellees, or either of them. There is no claim that he was on the lot upon any business connected with appellees.

In his petition, counsel treats "gross neglect and wilful neglect" as synony-
mous, and we are left to doubt whether the pleader means to charge
either actual malice or ante-social recklessness on the part of appellees.
No case can be found that will sustain the claim asserted by appellant.
(L. & P. Canal Co. v. Murphy, 9 Bush, 522; Board Int. Imp. v.
Scearce, 2 Duv., 576; Lexington v. Lewis, 10 Bush, 678; 25 Mich., 1;
Thompson on Negligence, vol. 1, 303.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellant, Bud Bransom, adminis-
trator of his infant son, Bertie Bransom, deceased, brought
under section 3, chapter 57, General Statutes, which is as
follows:

"If the life of any person　.　is lost or destroyed by the
wilful neglect of another person or persons, . . their
agents or servants, . . then the widow, heir, or personal
representatives of the deceased, shall have the right to sue
such person or persons, . . and recover punitive dam-
ages for the loss or destruction of the life aforesaid."

The question on this appeal is, whether the facts stated
in the petition and amended petition, to which a general
demurrer was sustained, constitute a cause of action.

The statement in the pleadings is substantially as follows:
Appellees, Labrot & Graham, are partners in business, and
as such the owners of about 200 pieces of oak and poplar
timber, each 8 feet long, from 6 to 8 inches square, and
weighing from 100 to 200 pounds, which they employed
and caused appellee, Shaefer, their agent and servant, to
pile up on a certain uninclosed and unprotected lot of land
owned by Harvie, in the city of Frankfort; that instead of
stacking the timber upon level ground, and placing the
pieces so as to make the entire pile safe and secure, as they
should and, by ordinary care and diligence, could have done,
they were, by the gross and wilful neglect of appellees,
placed promiscuously in one large, irregular and dangerous

pile, six or seven feet high, on a small, cone-shaped hillock, so narrow that it was impossible for the pieces nearest the ground to safely support those above them, and the top pieces being thus left without secure foundation, leaned at irregular angles, and were suspended in a dangerous condition, ready to fall at any time of their own weight; that for a period of more than fifteen years next before the life of deceased was destroyed, the public had been licensed and permitted by the owner to enter upon, use, and enjoy at will, the lot and a passway across it, from Clinton to Wilkinson street, as a common thoroughfare, upon which passway, and not exceeding forty feet from Wilkinson street, the pile of lumber was placed, causing an obstruction thereto.

It is further stated that deceased was, when he was killed, residing with his father, within less than 200 feet of the lot, and for many years a large number of small children, living near thereto, were in the habit of resorting to and playing and amusing themselves, both day and night, on the lot, and around and near the timber after it was placed there, all of which was well known to appellees before and at the time. And after it was so placed, a person residing near the lot gave notice to them of the dangerous character of the lumber pile, and requested them to make it safe, which, with ordinary diligence, they could have done; but they failed and refused to do so, and permitted it to remain in the same condition until May 12, 1881, when, without the fault of appellant or power to prevent it, or fault on the part of deceased, one of the heavy timbers fell upon his head and body, and crushed his brains out, instantly destroying his life.

To maintain an action under the section quoted, it is necessary to allege that the loss or destruction of life was caused.

by the wilful neglect of the party sued. But we do not agree with counsel for appellee, that because the term "gross," which signifies a less degree of negligence, is unnecessarily coupled throughout the petition and amended petition with "wilful," which signifies the degree contemplated in the section, the force or meaning of the latter is qualified or rendered doubtful.

It does not appear whether Labrot & Graham were in the lawful possession of the lot or not, but as it may, from the statements in the pleadings, be fairly inferred, we will consider this case as if they were.

As a general rule, the owner of land may retain to himself the sole and exclusive use and occupation of it; but as property in lands depends upon municipal law for its recognition and protection, the individual use and enjoyment of it are subject to conditions and restraints imposed for the public good, and from a reasonable and humane regard for the welfare and rights of others. Hence, according to the maxim, *sic utere tuo ut alienum non lædas*, a party may be made liable for the negligent use of his property, whereby the person or property of another has been injured.

It is held that a party is guilty of negligence in leaving anything in a place, when he knows it to be extremely probable that some other person will unjustifiably set it in motion, to the injury of a third person. (1 Addison on Torts, 511.) And said a learned judge: "It appears to us that a man who leaves in a public place, along which persons, and amongst them children, have to pass, a dangerous machine, which may be fatal to any one who touches it, without any precaution against mischief, is not only guilty of negligence, but of negligence of a very reprehensible character, and not the less so because the imprudent and unauthorized act of

another may be necessary to realize the mischief to which the unlawful act, or negligence of the defendant, has given occasion." (39 B. Din., 339.)

Counsel for appellees refers us to the following rule laid down in the case of Hargraves v. Deacon (25 Mich., 1): "The owner of private grounds is, under no obligation to keep them in a safe condition for the benefit of trespassers, idlers, bare licencees, or others who may come upon them, not by invitation, express or implied, but for pleasure or to gratify their curiosity, however innocent or laudable their purpose may be."

If this rule is to be interpreted so as to relieve the owner of private grounds from all, or even reasonable, care for the safety of those who, without his invitation, may come upon them, it is not a reasonable or humane rule, for the owner has no right to wantonly injure even an actual trespasser. It, however, has no application to this case, for the lot upon which the lumber pile was placed had been for many years, by license of the owner, used as a passway by the public and a playground by children, and even if appellees were lawfully in possession of the entire lot, still the transfer of that possession by the owner to him did not necessarily operate as a revocation of the license, or make those going on it, without notice of such revocation, even technical trespassers, especially as the lot continued uninclosed.

But the rights and duties of appellees in this case are to be considered and determined in their relation to an infant, who, though his exact age is not given, is stated in the pleadings to have had, by reason of his tender years, no knowledge of the impending danger from the timber pile, or power to prevent the destruction thereby of his life.

It is a reasonable and necessary rule that a higher degree

of care should be exercised toward a child incapable of using discretion commensurate with the perils of his situation than one of mature age and capacity; hence, conduct which toward the general public might be up to the standard of due care, may be gross or wilful negligence when considered in reference to children of tender age and immature experience.

While, therefore, the owner of land is not bound to provide against remote and improbable injuries to children trespassing thereon, there is a class of cases which hold owners liable for injuries to children, although trespassing at the time, when, from the peculiar nature and open and exposed position of the dangerous defect or agent, the owner should reasonably anticipate such an injury to flow therefrom as actually happened.   In such case the question of negligence is for the jury.   (1 Thompson on Negligence, 304–5, and numerous authorities cited.)

"It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instinct, might run into it and be killed, and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle by instincts equally as strong, might thereby be killed or maimed for life.   Such is not the law." (9 East, 277.)

The proprietor of a paper mill propelled by steam, in a sparsely settled portion of a city, left two cog-wheels geared together outside the wall, twenty inches from the ground and twenty feet from the street, exposed, unprotected, and constantly in motion.   A boy three years of age, playing

near this gearing, was caught in it and his leg taken off.
In that case suit was brought after the party injured arrived
at full age, and the jury found for the defendant; but the
supreme court reversed the judgment on the ground that the
verdict was against the evidence.    (1 Head, 610.)

The owner of a coal yard had an elevator, worked by
steam, close to the sidewalk.    During an intermission of
work the sliding door, by which it was commonly shut off
from the street, was left open and unguarded, in consequence
of which a child got under it and was crushed by the de-
scending car.    The question in that case was held to be for
the jury.    (Mullaney v. Spence, 15 Abb. Pr. N. S., 319.)

In the case of Railroad Company v. Stout (17 Wall, 657)
it was held that the care and caution required of a child is,
according to its maturity and capacity, only to be deter-
mined in each case by the circumstances of that case, and
that a railroad company might be held liable, on the ground
of negligence, for a personal injury to a child of tender
years, in a town or city, caused by a turn-table, built by
the company on its uninclosed land, left unguarded and un-
locked, in a situation which rendered it likely to cause in-
jury to children.    To the same effect are the cases of Kiffe
v. Milwaukee R. R. Co. (21 Min., 207), Koins v. St. Louis
R. R. Co. (65 Mo., 592), and Whirley v. Whitman (1 Head,
610).

The case of Louisville & Portland Canal Company v. Mur-
phy (9 Bush, 522) is not inconsistent with the general doc-
trine now made applicable to this case.    There a small child,
attempting to follow her sister, only two years older than
herself, who had been sent to a grocery store on the oppo-
site side of the canal from where they lived, fell through the
iron railing of the bridge and was drowned.    The bridge

was safe and sound for all ordinary purposes of travel, and was originally built as a matter of private convenience to the company. It was not a proper or usual place of resort for children, because it was more or less dangerous to them, whether sound or not; nor did the defect in the railing render it unsafe for persons to pass over it. This court, therefore, held that "good faith did not require it should be kept in such condition as to make it a place of safety for children, and, when made to answer all the purposes of travel, nothing more should be demanded of the company."

In this case the lumber pile was within forty feet of a public street, across a passway the public had been accustomed to use, and upon an open, unfenced lot that children had for years been in the habit of resorting to by license of the owner, and without objection or warning by appellees, and to which they could, before the timber was placed there, resort with safety. It was, therefore, the duty of appellees, in placing their timber upon the lot, to do it in such manner as to make it reasonably safe and secure against injury to children coming there; and as, according to the statement in the pleadings, they failed to do so, and the lumber was piled by appellee, Shaefer, as the agent and in the scope of his authority from appellees, Labrot & Graham, we think a *prima facie* case was presented, and the court erred in sustaining the demurrer.

Wherefore, the judgment is reversed, and cause remanded for further proceedings consistent with this opinion.