W. W. Simonton v. Citizens Electric Light and Power
Company.

Decided March 27, 1902.

1.—Pleading—Legal Conclusion.

In determining the sufficiency of a pleading mere legal conclusions of the pleader will be disregarded and the pleading tested solely by the facts stated therein.

2.—Injury to Child—Implied Invitation.

Where the owner makes use of his property as others ordinarily do throughout the country, an invitation to a child to go thereon will not be implied, although the property be calculated to and does attract the child.

3.—Same—Electric Poles.

Electric light poles placed along the streets with spikes driven in them from a point near the ground for use by the owner's servants in ascending the poles are not such unusually attractive structures to children as to come within the doctrine of the turntable cases and constitute an implied invitation to children to go thereon.

Appeal from Harris. Tried below before Hon. Wm. H. Wilson.

*Jovejoy, Sampson & Malevinsky, C. E. & A. E. Heidingsfelder,* and *Burke & Griggs,* for appellant.

*Hutcheson, Campbell & Hutcheson,* for appellee.

PLEASANTS, Associate Justice.—Appellant brought this suit to recover damages for injuries to the person of his minor son, alleged to have been caused by the negligence of the defendants. The acts of the defendants which are alleged to have caused the injury to plaintiff's son and are charged to be negligent are thus stated in plaintiff's petition:

"1. That heretofore, to wit, on or about the 27th day of August, A. D. 1899, and for a long time prior thereto, the said defendants had illegally and unlawfully erected and maintained a certain large electric light pole upon a sidewalk on a street in the city of Houston, known as Congress avenue, and located between certain streets in said city, known as Chenevert and Hamilton streets, which said pole was near the home of the plaintiff in said city of Houston, as aforesaid. That said pole, together with many others in the city of Houston of a similar character, were erected and used by said defendants in the conduct of their said business, which the plaintiff alleges to be a transmission and distribution of electric currents for lighting purposes, for hire, and that said pole and the wires erected and maintained on said pole were used for the purpose of furnishing electric lights to private citizens in the city of Houston, and not for any public use or purpose.

"2. That before or after the erection of said pole, the defendants illegally and unlawfully placed or drove a great number of iron spikes in said pole, commencing about twenty inches from the ground or sidewalk, and leaving a space of about twenty inches between each spike,

forming a row or rows of spikes or foot rests, reaching to a point near the top of said pole. That said spikes or foot rests, so placed and left remaining, protruded or stood out from the sides or surface of said pole to the extent of five or six inches, forming the steps of a sort of ladder, which was primarily intended to be used by the employes of said company in climbing said pole for work thereon. That said pole was erected and maintained in said condition, not upon any private property of the defendant company, but upon a public sidewalk or street in said city of Houston, as aforesaid, and upon a pathway that was used and frequented by the citizens of Houston at all times of the day and night.

"3. That said spikes or steps were placed or started so near the ground that children of tender years and with absolute want of discretion, or knowledge of the danger resulting therefrom, could climb said poles with the same facility and ease as an adult, and that said poles were thus left and maintained by the defendants, with said spikes or steps so arranged and constructed as to prove a dangerous menace to the lives and limbs of children in said neighborhood.

"4. That the manner of construction and maintenance of said pole, as aforesaid, and its condition, was a direct invitation to children in said neighborhood, and particularly to the plaintiff's child, Gussie Simonton, who was a child of immature discretion and without judgment, or knowledge as to the danger therewith, to climb said pole and play thereon. That it was well known to the defendants, their servants, agents, and employes that the children in said neighborhood did use said pole to climb and play thereon, and that notwithstanding such knowledge on the part of the defendants, their servants, agents, and employes, they maintained said pole in said dangerous and hazardous condition, and invited the children in said neighborhood to indulge in the pastime of climbing upon said pole. That said pole in its condition was unusually attractive and seductive to children of tender years, and it was especially and unusually calculated to attract, and it did attract small children and appealed to their instinct to play, and it tempted and lured them, and thereby caused them to climb thereon, and in other ways made it the means of children's sport and diversion, they being ignorant of the danger thereby incurred.

"5. That on or about the said 27th day of August, A. D. 1900, the plaintiff's child, Gussie Simonton, being at that time of the age of 7 years, and lacking mature judgment and discretion, and being unmindful of the danger and hazard connected therewith, while playing with several children around and about said pole, as was their habit and custom, the said Gussie Simonton climbed on said pole and onto the steps or spikes attached thereto, as aforesaid, and that whilst the said Gussie Simonton was on said pole he lost his balance and was precipitated from a great height on said pole to the sidewalk below, fracturing his skull and breaking his arm, injuring his spine and back, and internal organs, to wit, his liver, kidneys, and also greatly bruising and injuring his legs and body. That his injuries so received at said time and place have

rendered said Gussie Simonton a cripple, and in addition to the injuries hereinbefore set forth, impaired his eyesight and mental faculties.

"6. The injuries to the said Gussie Simonton, as aforesaid, were directly and proximately caused and occasioned by the negligence and carelessness of the defendants, their servants, agents, and employes, in that they negligently and carelessly, and without any regard to the life or security of minor children, of immature judgment and discretion, who lived in the neighborhood of said pole and played thereon, equipped and maintained said pole with said spikes or steps thereon, as aforesaid, in a dangerous and hazardous condition, and thus directly invited said Gussie Simonton into a place of danger and hazard, causing his injuries as aforesaid."

The defendants demurred generally and specially to the petition, the special exceptions being as follows:

"1. And further answering, this defendant especially excepts to that part of paragraph 1 of plaintiff's petition which alleges that the said defendant had 'illegally and unlawfully' erected and maintained, etc., in that the said statement is not a pleading of fact, but is merely a conclusion of law, and should be stricken from its pleadings, and of this he prays the judgment of the court.

"2. And further answering, this defendant especially excepts to that part of paragraph 2 of plaintiff's petition which alleges that defendant 'illegally and unlawfully' placed or drove a great number of iron spikes in said poles; that the said allegation is not an allegation of fact, but a conclusion of law; that the same should be stricken from the pleading of the plaintiff, and of this he prays the judgment of the court.

"3. And further answering, this defendant especially excepts to paragraph 3 of plaintiff's petition, insomuch as it states 'that said poles were thus left and maintained by the defendant, with said spikes or steps so arranged and constructed as to prove a dangerous menace to the life and limbs of children living in said neighborhood;' that said allegations are not allegations of fact, but are mere conclusions from facts not stated, and are not proper pleading, and of this he prays the judgment of the court.

"4. This defendant further especially excepts to that portion of paragraph 4 of plaintiff's petition which states that the manner of construction and maintenance of said poles was a direct 'invitation' to children in the said neighborhood, because said allegation is not an allegation of fact, but a mere conclusion or inference, and of this he prays the judgment of the court.

"5. This defendant further especially excepts to paragraph 6 of plaintiff's petition; that the said paragraph 6 is not a pleading of facts, but a pleading of conclusion of law and of fact, and of this he prays the judgment of the court."

The court below sustained the general demurrer and all of the special exceptions to the petition, and plaintiff declining to amend, his suit was dismissed.

Under the common law no duty is imposed upon the owner to use care to keep his property in such condition that persons going thereon without his invitation may not be injured, his only duty to persons thus entering upon his premises being to abstain from willfully injuring them. This rule of law applies to infants with the same force that it does to adults, but in certain classes of cases an invitation by the owner to enter upon his property will be implied by estoppel in favor of children from facts that would raise no such implication as to adult persons. Dobbins v. Railway, 41 S. W. Rep., 62. Ordinarily an invitation will not be implied unless the property is designed or used by the owner for public purposes, such as a hotel or store where a mercantile business is conducted, and the person entering upon the premises is carrying out a purpose or design which is to the common interest or advantage of the owner and himself. Plumber v. Dill, 156 Mass., 426; Bennett v. Railway, 102 U. S., 584. But in the case of injury to children our courts have gone much further, and have established the doctrine that an invitation may be implied by estoppel even against the intention of the owner, if such owner maintains upon his premises, where children are likely to be, something which on account of its nature and surroundings is especially and unusually calculated to attract and does attract them and induce them to go upon his premises. Railway v. Morgan, 92 Texas, 98.

Appellant contends that under this rule the facts stated in the petition are sufficient to authorize a finding that his son climbed upon appellee's pole by the implied invitation of the latter. We can not concede the soundness of this contention. In considering the question of the sufficiency of the petition we must disregard the statement by the pleader of mere legal conclusions and test the petition solely by the facts stated therein. The facts pleaded do not show that the pole which is alleged to have been negligently maintained by the defendant was specially or unusually attractive, or that such pole was not constructed and maintained in the manner in which poles of this character are ordinarily constructed throughout the country. On the contrary, the petition alleges that the defendant maintained its other poles in the city of Houston in the same manner. It is alleged that spikes are driven in the pole from a point near the ground to a point near the top of the pole so as to form a kind of ladder, but there is no allegation that such is not the proper and necessary method of constructing poles which are used for the support of electric wires, in order that the servants of the defendant might be enabled to reach the top of the pole whenever it became necessary to place or repair the wires which, as the petition alleges, was the primary object of the defendant in so placing said spikes in the pole.

It is a matter of common knowledge that this is the condition in which poles used for the purpose for which this pole was used are ordinarily maintained. In the case of Railway v. Morgan, supra, Judge Denman says: "Where the owner makes use of his property as others ordinarily do throughout the country, there is not in legal contemplation

any evidence from which a court or jury may find that he had invited the party injured thereon, though it be conceded that his property was calculated to and did attract him. It is only when one maintains upon his premises something which on account of its nature and surroundings is especially and unusually calculated to attract, that the court or jury may find an invitation."

In all of the turntable cases the invitation is implied from the fact that by reason of the turntable being left unlocked so that it could be and was used by children as a plaything it was especially and unusually attractive. No issue of negligence could arise on the allegations of this petition by reason of the proximity of defendants pole to the public highway. Plaintiffs son was not injured while using the highway, but while going upon and using for purposes of amusement the property of defendant. Gay v. Railway, 139 Mass., 437.

It has been held that railway cars and cattle pens and shutes used in the herding of cattle are not such specially and unusually attractive structures as to come within the doctrine of the turntable cases, and a child going upon such structures is a trespasser and can not recover for injuries caused by the negligence of the owner of such property, unless the act causing the injury be willful. Barney v. Hanibal, 28 S. W. Rep., 1096; Railway v. Cunningham, 26 S. W. Rep., 474. We believe that it would be unwise to extend the doctrine of the turntable cases to cases of this character. It would seriously retard the material progress and cripple the business interests of the country if persons owning and operating public utilities, which from their very nature require the use of structures and appliances placed in proximity to public highways, should be forbidden to use or maintain any structure or appliance of a kind calculated to attract and allure children to attempt their use as playthings, and which when so used becomes dangerous. As said by Judge Gaines in the case of Railway v. Edwards, 36 Southwestern Reporter, 431, we believe that the doctrine upon which the turntable cases have been sustained goes to the limit of the law, and sound public policy forbids that it be further extended.

We are of opinion that the demurrers to the petition in this case were properly sustained, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.