## Gnau, et al. v. Ackerman, et al.

Decided October 19, 1915.

## Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Municipal Corporations—Liability for Obstruction of Street by Property Owner.—Where a municipal corporation issued a permit to a property owner to build a house, giving him the right to place material in the street, the municipality was under a duty to take notice of the use to which the owner put the street, and was liable in damages to any person sustaining injuries on account of the obstruction the owner put in the street making it unsafe for travel.

2. Municipal Corporations—Duty to Keep Streets in Safe Condition for Travel.—A municipal corporation is under a duty to exercise ordinary care to keep its streets reasonably safe for public travel, and it must take notice of the different classes of people that use its streets and maintain them in order for use by these several classes, including children.

3. Municipal Corporations—Care Required of as to Streets Used by Children.—A city must take notice of the use of its streets by children and exercise ordinary care to keep them reasonably safe for such use, and if it places or permits to be placed in the streets an attractive nuisance that is dangerous to children, it will be answerable for any injury they sustain.

4. Municipal Corporations—First Class Cities—Ordinances.—Under section 2775 of the Kentucky Statutes the courts are required to take judicial notice of the ordinances of the city of Louisville, and this dispenses with the necessity of introducing these ordinances in evidence.

5. Municipal Corporations—Streets—Obstruction of by Property Owner—Duty and Liability.—Where a property owner secures permission from the city to use its street for the purpose of placing building material thereon, it is his duty to so protect the material as to leave the street reasonably safe for public travel by children as well as adults, and he cannot excuse himself from either his duty or liability by employing other persons to do what he has been granted permission by the city to do.

6. Municipal Corporations—Streets—Obstruction of—Who Liable for. —Where a city grants permission to a property owner to put building material in a street, and a traveler is injured by reason of failure to properly protect the material, the city, the property owner and the contractor employed by him to do the work may be held jointly and severally liable to the injured party.

7. Municipal Corporations—Streets—Attractive Nuisance—Sand Pile. —Where a sand pile accessible to children was placed in the street, it was an attractive nuisance, and the property owner, the city and the contractor were each liable for damages on account of injury to a child, who was burned in a bed of slaking lime that had been placed in the sand.

8. Evidence—Judicial Notice—Jury May Take Notice That Sand Pile is Attractive to Children.—That a sand pile is attractive to children and a place where they delight to play, is a matter of such common knowledge in the every-day affairs of life that courts and juries may take notice of it without direct evidence on the subject.

9. New Trial—On Account of Smallness of Damages.—Under section 341 of the Code a new trial cannot be granted on account of the smallness of damages in an action for injury to the person, but if the inadequacy of the verdict is attributable to errors committed during the trial of the case, the mere fact that the damages are inadequate, or that this may be one of the causes for granting a new trial, does not interfere with the right of the court to set aside the verdict.

10. New Trial—Smallness of Damages—Presumption.—Where grounds other than the inadequacy of the verdict are relied on to obtain a new trial, and these grounds, or some of them, are sufficient to justify the trial court in directing one, we will not assume that the new trial was granted because the recovery was inadequate when the record does not show the reasons that influenced the trial court in ordering a new trial.

11. Damages—Injury to Child.—Where the hand and arm of a child were totally destroyed and the other hand and body badly burned a verdict for $10,000 was not excessive.

W. J. O'CONNOR and O'DOHERTY & YONTS for appellants.

ARTHUR H. MANN and KOHN, BINGHAM, SLOSS & SPINDLE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In August, 1911, John Ackerman, a little boy between two and three years of age, sustained severe, painful and permanent personal injuries by falling into a bed of slaking lime, commonly known as a mortar bed, which had been placed in the carriageway of Magnolia Avenue, one of the streets of the city of Louisville. To recover damages for the injuries so sustained, he brought this

suit by his father as next friend against P. J. Gnau, the owner of the adjacent building in which it was intended to use the mortar that was being prepared for use.; T. F. House, who had the contract for building the house, and the city of Louisville.

The petition, after making the usual averments in cases of this kind, further set out "that the mortar bed was in the depression made in the center of a pile of sand, and had the appearance to children of an ordinary sand pile and in its nature was attractive and alluring to and did attract children of tender years, including the infant plaintiff, all of which was or could, by the exercise of ordinary care, have been known by the defendants and each of them; but, nevertheless, they failed to guard or barricade the mortar bed so as to exclude children therefrom."

On the first trial of the case there was a verdict in favor of appellee for one thousand dollars, which was subsequently on motion of appellee set aside by the trial court, and on the second trial of the case there was a judgment in favor of appellee for ten thousand dollars against Gnau, the city, and House, one third, as found by the jury, to be paid by each of them. It appears that House is insolvent, and so no appeal is prosecuted from the judgment against him.

The facts are substantially as follows: The defendant Gnau, who was the owner of a lot on Magnolia Avenue, obtained a permit from the city to erect a house thereon, which permit carried with it the right to make use of the adjacent street in accordance with the city ordinance on the subject. This ordinance provided that when a building permit was issued the applicant therefor might use a designated portion of the street in front of the premises being improved for the purpose of placing thereon building material. And in accordance with this permit and the ordinances of the city, the mortar bed in question was placed in the carriageway of Magnolia Avenue. The pile of sand had been placed in the street some days before the lime bed was made, and the children of the neighborhood had been playing in this sand from the time it was placed in the street until a few hours before the plaintiff fell into it. The lime bed, however, was not made in the sand nor had the lime commenced to be slaked until late in the afternoon of the day on which the plaintiff was injured.

The parents of the plaintiff lived in a house about a hundred feet from this mortar bed, which consisted of a bed of sand probably twelve inches deep and about nine feet long and twelve feet wide, with a bed of slaking lime in the center. Between seven and eight o'clock at night the plaintiff ran out of his mother's house into the street and went immediately, as any child would, to this bed of sand, and in a moment afterwards his screams were heard by Jacob Loeb, who was passing, and he at once went to the bed, took the child out and carried him to his mother. The little boy was horribly burned. His left hand was totally destroyed and his right hand was badly burned, as were other parts of his body.

The only substantial dispute in the evidence grows out of the widely differing testimony as to whether this sand pile was barricaded or protected in any manner after the lime bed had been made. Witnesses for the plaintiff said that there were no boards or other barriers around the pile, or any covering on top of it, and that the sand pile, the center of which had been hollowed out for the purpose of containing the lime to be slaked, was about eighteen inches high around the edges, while witnesses for the defendant said that the sand pile with the lime in the center was enclosed by boards and also covered by boards.

If the precautions described by witnesses for appellants had been taken it seems very improbable that the child could have gotten in the bed of slaking lime, and the weight of the evidence tends to support the view that there was no barrier of any kind placed around the sand pile or any covering placed on top of it. There was an electric street light nearby, and some of the witnesses say a red lantern had been put up at the sand pile, but whether the lantern was there or not, the electric light was sufficient to plainly disclose to any adult person using the street the presence of the mortar bed; but of course this little boy gave no heed to either the red light, if there was one, or the electric light. He only knew, in his childish way, that there was a sand pile there, and into that sand pile he wanted to and did go, totally ignorant of the burning lime in the middle of the sand and unconscious of the danger of playing in or about it.

The city moved the court to direct a verdict in its favor because the evidence showed that it did not have any notice of the fact that lime had been put in the sand

bed for the purpose of slaking between the time it was placed there and the time of the accident, a few hours afterwards.

There would be much force in this position if it were necessary to bring notice home to the city in order to charge it with liability for the accident. But it is well settled in this State that where a city authorizes work to be done and a part of its street to be obstructed by material while the work is in progress, it must take notice of the nature and character of the obstruction which it has authorized. City of Louisville v. Keher, 117 Ky., 841; Blocher v. Dieco, 30 Ky. L. R., 689; De Garmo v. Vogt, 151 Ky., 847; Town of Bellevue v. Rentz, 152 Ky., 426.

The further argument is made for the city that although the plaintiff introduced in evidence a permit issued by the city to Gnau, the ordinance of the city granting to persons having permits to build the right to use portions of the street for the purpose of placing building material thereon was not offered in evidence and therefore the plaintiff failed to prove that the city had authorized Gnau to use the street.

Under Section 2775 of the Kentucky Statutes, the courts are required to take judicial notice of the ordinances of the city of Louisville, and this statute dispenses with the necessity of introducing these ordinances in evidence. It was no more necessary to introduce the ordinance of the city relied on than it would have been to introduce a section of the Kentucky Statutes under which an action was brought. Weiss v. Commissioners of Sewerage, 152 Ky., 552.

In the instructions the court, after reciting that Gnau had obtained permission to make improvements upon his property and that this gave him the right to use a part of Magnolia Avenue for the purpose of placing his building material therein, further instructed the jury that it was the duty of Gnau and House to "so place and guard said lime bed as to render the street reasonably safe for persons lawfully using same; and if you believe from the evidence that said lime bed was attractive or inviting to children, and it was dangerous for them to go upon it, and that the said Gnau and House knew, or by the exercise of ordinary care could have known, that the said lime bed was attractive or inviting to children, and that it was dangerous for them to go upon it, if it was so attractive or inviting and dangerous for them to

go upon it, then it was their duty to exercise ordinary care to prevent injury to children using the street by adopting and enforcing such precautions as were reasonably sufficient for that purpose; and if you shall believe from the evidence that Magnolia Street at the time and place mentioned was not reasonably safe for use by the public by reason of the lime bed referred to in the evidence, and if you shall further believe from the evidence that Gnau and House negligently failed to adopt and use such precautions in guarding said lime bed as were reasonably necessary to protect children using said street from injury, and that by reason of such failure upon their part, or of either of them, or any of their employes, if they or any of them did so fail, the plaintiff received the injuries of which he complains, the law is for the plaintiff as against the defendants Gnau and House, and the jury should so find.

"But unless you shall so believe from the evidence, the law is for the defendants, Gnau and House, and the jury should so find."

In the second instruction the jury were told that "It was the duty of the defendant, city of Louisville, to keep its streets and highways, including Magnolia Avenue, at the place indicated in the evidence, in a reasonably safe condition for use by persons lawfully using the same; and to exercise ordinary care to cause the precautions referred to in the first instruction to be taken by the defendants, Gnau and House, while the lime bed referred to in the evidence remained in the street for the construction of said building under said permit; and if the jury shall believe from the evidence that Magnolia Street, at the time and place mentioned, was not reasonably safe for use by the public by reason of the lime bed referred to in the evidence; and if the jury shall further believe from the evidence that the defendant, the City of Louisville, failed to exercise ordinary care to cause the precautions referred to in the first instruction to be taken by Gnau and House, and that by reason of its negligence in that regard, if it was negligent, the plaintiff received the injuries of which he complains, then the law is for the plaintiff as against the City of Louisville, as well as Gnau and House, and the jury should so find.

"But unless you shall so believe from the evidence, the law is for the defendant, the City of Louisville, and the jury should so find."

These instructions are criticised both by the city and Gnau, but we think they fairly submitted the law of the case as to both of these defendants. It will be noticed that the first instruction told the jury that it was the duty of Gnau and House to so protect the lime bed as to render the street reasonably safe for persons lawfully using the same, and that if the lime bed was attractive or inviting to children, as well as dangerous for them to go about, and Gnau and House knew, or by the exercise of ordinary care could have known, this fact, it was their duty to exercise ordinary care to adopt such means of protecting the bed as were reasonably sufficient to guard it against use by children, and if they failed to adopt such precautions as were reasonably sufficient they were guilty of negligence.

The second instruction charged the city with the duty of keeping the street in reasonably safe condition, and with the further duty of exercising the care with respect to children that was imposed upon Gnau and House, and that if it failed to exercise the care indicated it was guilty of negligence.

The city was under a duty to exercise ordinary care to keep its streets in reasonably safe condition for public travel, and this duty imposed upon it the necessity of keeping them in such condition not only for adults but for all others who had the right to use them. Children have as much right to use the streets as grown persons, and the city has not performed its duty when it maintains its streets in reasonably safe condition for the use of adults but leaves them in an unsafe condition for use by children. If it requires a higher degree of care to keep the streets safe for use by children than it does to keep them safe for use by adults, then the city must exercise this degree of care, as the ordinary care exacted of the city in the maintenance of its streets means ordinary care in respect to all who have the right to use the streets. It cannot excuse itself from liability, as attempted in this case, by saying that this lime bed was in a well lighted street and so conspicuous as that no adult, in the exercise of reasonable care, would walk or go into it; and so, having exercised this measure of care, it was not required to keep the place reasonably safe for children. The city must take notice of the use of its streets by children, and if it places, or permits to be placed, in the streets an attractive nuisance that is

dangerous to children of immature years and thought-less habits, it will be answerable for any injury they sustain in consequence of its failure to exercise ordinary care to keep its streets in reasonably safe condition for use by children.

The measure of care required of a city and its duty in respect to its streets extends alike to all classes using the streets—the old and young, the strong and the weak—and it owes to each of them precisely the same degree of care, although this measure of care may impose upon it the necessity of taking greater precautions as to one class than would be required as to another class. This does not mean that under any circumstances the city is obliged to do more than exercise ordinary care to keep its streets in reasonably safe condition for use. It only means that it must take notice of the different classes of people that use its streets and must maintain them in order for use by these several classes, although this may demand more care than would be necessary if only one class of people used the streets.

The city granted permission to Gnau to place this obstruction, or attractive nuisance to children, in the street, and therefore it occupies precisely the same attitude as if it had placed this obstruction in the street. The city could not, by granting this permission, relieve itself of the duty it owed to keep its streets in reasonably safe condition for use. The duty of keeping its streets in condition for use is an absolute duty that the city can not delegate to others and thereby excuse itself. When it grants permission to another party to place an obstruction in its streets, it must take notice of the nature and character of obstruction so placed and the manner in which it is maintained, and see to it that it does not make the street unsafe for use by the public. If this were not so the city could, by granting permits to occupy its streets, relieve itself entirely of the duty it owes the public; and we do not know of any authority that would countenance a doctrine like this.

In the case we have, the property owner, Gnau secured from the city the right to place this lime bed in the street, but this did not have the effect of excusing the city from the care imposed upon it, or have the effect of excusing Gnau from the duty he owed not to leave the street in such condition as to be unsafe for the uses to which it was set apart and dedicated.

If Gnau, without obtaining permission from the city, had placed a dangerous obstruction in the street, there could be, of course, no question about his liability in damages to any person injured by the obstruction, if it developed that it rendered the street unsafe for public travel, and in such a state of case the city would be jointly and equally liable to Gnau if it had notice of the obstruction in time to take such measures as might be necessary to remove or protect it. Now this duty and corresponding liability of Gnau was not diminished by the fact that he obtained permission to place the obstruction in the street. The city did not give him the right to unreasonably obstruct the street or to make it unsafe for public use, and when the city granted this permission to Gnau it undertook, as between it and persons using the street, that Gnau would not place any dangerous obstructions in the public way, and Gnau undertook that he would not do anything that would make the street unsafe for public use.

If then the use that Gnau made of the street made it unsafe for public use, both the city and Gnau became jointly and severally liable for injuries suffered in consequence thereof. Their measure of duty and liability was precisely the same.

It is scarcely necessary to add that Gnau was responsible not only to the city but to the public for any negligence on the part of contractors employed by him to do the work. He could not excuse himself from either his duty or his liability by employing other persons to do what he had been granted permission by the city to do. The city gave permission to Gnau to place material in the street, and if he, under that grant, permitted or authorized others to do what he had the right to do, he, of course, assumed responsibility for their conduct, although they might also be liable, in connection with Gnau and the city, to any person injured by reason of their negligence. The principles we have set forth as governing in this case are fully supported by the following authorities: Bransom's Admr. v. Labrot, 81 Ky., 638; U. S. Natural Gas Co. v. Hicks, 134 Ky., 12; Sydnor v. Arnold, 122 Ky., 557; Louisville Ry. Co. v. Esselman, 29 Ky. L. R., 333; Snare & Triest Co. v. Friedman, 169 Fed. 1; 40 L. R. A. (N. S.), 367.

There is some complaint made of the action of the trial court with respect to argument of counsel, but we find no objection to the course pursued by the trial court.

It is next contended on the part of both appellants that the verdict is excessive. We do not think so. This little boy has been made a cripple for life. Aside from the other burns upon his body, his left hand and arm are not only dreadfully disfigured but their use is totally destroyed. Just what ought to be or should be reasonable compensation for an injury like this, it is not possible to determine with mathematical accuracy, or, indeed, with even reasonable accuracy. No rule has ever been or ever can be laid down by which the damages allowable in personal injury cases may be carefully measured or computed. The best that can be done under these circumstances is to leave what is fair and right to the judgment and discretion of the twelve men who compose the jury, and their judgment and discretion we are not authorized to and will not interfere with unless it appears that their assessment was influenced by passion or prejudice or is so unreasonable as to appear at first blush entirely disproportionate to the injuries sustained. Neither of these conditions appear in this case, and therefore we will not disturb the judgment on the ground that it is execssive. L. & N. R. R. Co. v. Mitchell, 87 Ky., 327; Louisville R. Co. v. Bryant, 142 Ky., 163; L. & N. R. R. Co. v. Pedigo, 129 Ky., 664.

Another ground urged for reversal is that the court erred in setting aside the first verdict for one thousand dollars. The Code provides, in Section 341, that "a new trial shall not be granted on account of the smallness of damages in an action for an injury to the person or reputation * * * ." Under this section the trial court is not authorized to grant a new trial in personal injury cases on the sole ground that the recovery is inadequate, independent of a recovery for special damages, if such damages are claimed. But if the inadequacy of the verdict is attributable to errors committed during the trial of the case, or if a new trial should be granted for other errors than the smallness of the damages, the mere circumstance that the damages are inadequate, or that this may be one of the causes for granting a new trial, does not interfere with the right of the court to set aside the verdict. Pendly v. I. C. Railroad, 28 Ky. L. R., 1324; Gaines v. Madisonville Hartford & Eastern R. R. Co., 143 Ky., 250.

Of course if it appeared that the trial court set aside the first verdict solely on account of the smallness of damages, we would have a case coming directly within the

provision of the Code denying to the trial court the right to set aside the verdict on this ground. But where grounds other than the inadequacy of the verdict are relied on to obtain a new trial, and these grounds, or some of them, are sufficient to justify the trial court in directing a new trial, we will not assume that the new trial was granted solely because the recovery was inadequate, when the record, as in this case, does not show the reasons that influenced the trial court in ordering a new trial. Norvell v. Paducah Box & Basket Co., 157 Ky., 703; Greenberg v. Hyman & Oppenheim, 159 Ky., 618; McLemore v. Evansville & Bowling Green Packet Co., 160 Ky., 566.

It has been frequently announced by this court that the discretion of the trial court in granting a new trial will not be interfered with unless it appears to have been abused, or it appears that in granting it the court transcended its authority under the Code. Wilhelm v. Louisville Ry. Co., 147 Ky., 196; Conley v. Central Kentucky Traction Co., 152 Ky., 764.

In this case it appears that the plaintiff asked for a new trial on other grounds than the smallness of the verdict, and we think the court, in the exercise of a sound discretion, may have granted the new trial on other grounds than the smallness of the verdict.

Another reason assigned for reversal is that there was no evidence to show that the little boy had been attracted to the sand pile, or that it was what may be called an attractive nuisance. There was evidence that other children had been playing in this sand pile for several days, and no direct evidence was needed to show that the little boy who was injured had been attracted to the sand pile or that it was what may be called an attractive nuisance. That a sand pile is attractive to children and a place where they delight to play, is a matter of such common knowledge in the everyday affairs of life that courts and juries may take notice of it without direct evidence on the subject. Wigmore on Evidence, Vol. 4, Sec. 2570; Craig v. Durrett, 1 J. J. M., 365; Baum v. Winston, 3 Met., 127. Every person who ever saw a pile of sand in an accessible place where young children play; knows its attractiveness for them. Everybody further knows that an ordinary sand pile is perfectly safe for children to play in at all times and under all circumstances, and when an ordinary sand pile, located in a

place accessible to children, is converted into a place of great danger, as, for example, when a bed of slaking lime is put in the middle of it, the person who converts this place of perfect safety into a place of extreme danger needs to be careful how he protects it.

The judgment is affirmed.