Ronald GOBEN, an Unmarried Infant, by
Kenneth Goben, his father, etc.,
Appellant,

v.

SIDNEY WINER COMPANY et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1960.

Dissenting Opinion Feb. 26, 1960.

As Modified on Denial of Rehearing
Feb. 24, 1961.

Theodore Wurmser, Preston L. Terry, III., Louisville, for appellant.

Edwin O. Davis, Richard F. Lynch, Louisville, for appellees.

PALMORE, Judge.

Plaintiff, Ronnie Goben, a 9 year old boy, was injured and lost 2 fingers when a concrete block column he was climbing (part of a garage under construction) collapsed with him, resulting in this suit for damages against the contractor in charge of the project (Sidney Winer & Co.) and the masonry subcontractor (William H. Cole). He appeals from a judgment entered pursuant to a directed verdict in favor of the defendants. The question is whether the cause should have been submitted to the jury, and we have decided it in the affirmative.

The accident occurred one Monday afternoon on the premises of a Mr. and Mrs. Lucas in a residential neighborhood in Louisville. The Lucases, who lived across and down the street a short distance from plaintiff's family, were having a 2-car garage built near the back of their house by Sidney Winer & Co., the contractor. The walls were of concrete block construction and were put up by Cole, the subcontractor. Cole finished his work sometime in the late forenoon on Friday, and the carpenters were to come on the next Monday to put on the roof. Inclement weather delayed the appearance of the carpenters, and no further work was done between noon on Friday and Monday afternoon. To serve as a central support for the sliding doors and the roof the garage had in the center of its front opening a single column of concrete blocks, 8″ x 8″ x 16″ each, 10 or 11 blocks high, one full and two half-blocks alternating. Thus the column was 16 inches wide, 8 inches thick, and some 7 or 8 feet high. It was supported only by its own weight (400 to 450 lbs.) and stabilized only by the mortar between the blocks. There were several bolts protruding from the column, making it inviting to boyish fancy for climbing purposes.

There were several children in the neighborhood (the Lucases had some of their own), and they were interested observers of the construction project. Some of them, including the plaintiff, on Friday had played in the bed of a truck used to deliver sand or other materials to the project, while it was parked in the Lucas driveway. On Monday afternoon after school a group of them were in and around the unfinished garage, and plaintiff undertook to climb the concrete block column, using the protruding bolts as steps. As he put his hand on the top of the column and was drawing himself upward it began to fall. He attempted to jump clear, but apparently one of the blocks fell on his hand, resulting in the amputation of two fingers. The evidence conflicts as to how much of the column came down. Plaintiff's witnesses say that all but the bottom one or two blocks fell over. Defendant's witness says that five were still standing.

According to Mrs. Lucas and her next-door neighbor, Mrs. Hays, according to all of the children, and according to the contractor himself, Mr. Winer, who inspected the work on Friday afternoon after the masonry subcontractor had left, the column looked "sturdy," "solid," and "strong," as it was variously expressed. Mr. Winer testified that there was nothing about it to indicate that it would fall if someone climbed on it. He had constructed many such garages and had never experienced a fall

of the center pier except when one was struck by a car. The job was done in a customary and workmanlike manner. On the other hand, Cole, the subcontractor, admitted that while the mortar is "green" such a column "is easy to push over," that the length of time it takes mortar to "set" depends on the weather, and that it would take 30 days to set "thoroughly," though in 2 days' time it ought to set sufficiently to prevent its being pushed over. He admitted also that: "On a windy day, when I leave a column like that I always take a piece of two-by-four or two-by-six or something that I can get up on each side of it and chock it. On a still day like today I don't—I never have yet, but on a windy day I have." He said that he had done this as many as 40 to 50 times in 10 years. Under questioning of counsel for the contractor he qualified his previous testimony by saying that even while the mortar is wet it would be a man's size job to push the column over, "but a child isn't going to do it."

Plaintiff, when asked on cross-examination if he was "showing off" in climbing the column, replied as follows:

"No, sir; I just wanted to see if it was sturdy enough to climb it. It looked pretty sturdy when I started to climb." He testified also that some 5 or 10 minutes before the accident Mrs. Lucas had told the children to stay out of the garage because someone might get hurt, and that when he had started climbing one of the little girls present had said, "Ronnie, you had better not climb on that. They might not want you to." Mrs. Lucas' version of her warning was that on Friday while the workmen were there she had told the children to quit playing in the truck because they might get hurt. On Monday several children (not including plaintiff) were playing on some left-over concrete blocks in her driveway and she asked them to go someplace else to play. Shortly before the accident she noticed the plaintiff among a group of children standing in the middle of the garage. A bicycle left there by a boy across the street seemed to be the center of attraction, and "to get rid of the noise" Mrs. Lucas had two of the children take the bicycle home, thinking that the children would then leave.

In his responses as a witness plaintiff appeared bright and alert, but his testimony cannot be regarded as conclusive either as to his discretion (and, therefore, capacity to be chargeable with contributory negligence) or, since the trial took place over 14 months after the accident, as to the accuracy of his version of what was said and done at the time of the events under discussion.

In the old case of Bransom's Adm'r v. Labrot & Graham, 1884, 81 Ky. 638, 50 Am.Rep. 193, defendants had stacked timber on an unfenced lot customarily used by the public for passway purposes and by the neighborhood children for a playground. After defendants had been warned of the dangerous character of the pile, and had failed to act, one of the heavy timbers fell on a child and killed him. In holding that a directed verdict was error this court recognized the principle that "there is a class of cases which hold owners liable for injuries to children, though trespassing at the time, when, from the peculiar nature and open and exposed position of the dangerous defect or agent, the owner should reasonably anticipate such an injury to flow therefrom as actually happened. In such case the question of negligence is for the jury."

In the Bransom case, supra, there was evidence that the timber was piled in a negligent manner, but in Harper v. Kopp, 1903, 73 S.W. 1127, 1128, 24 Ky.Law Rep. 2342, where a child was injured in falling from a stack of lumber piled in a street, it was held error for the court to give an instruction authorizing recovery only if the lumber was piled negligently: "Appellee's liability rests, not upon his negligence in the manner of stacking his lumber in the street under the circumstances stated, but upon the fact that he stacked it there at all,

where its unguarded situation became an attractive and accessible object of danger to very young children."

Following the principles announced in the Bransom and Kopp cases, this court in Louisville R. Co. v. Esselman, 1906, 93 S.W. 50, 52, 29 Ky.Law Rep. 333, affirmed a judgment in favor of an 11 year old boy who was injured when, after climbing to the top of a pile of I beams stacked about 4 feet high in the street (as permitted by ordinance) by the defendant for use on a construction project, he arose to climb down and one of the beams tipped over and caught his leg. The rationale of the opinion was stated as follows:

"It is the instinct of children of the age of appellee to play. Building material, stacked as this was, is peculiarly attractive to them. This is a fact known to every one. In a populous community this instinct is more than likely to find vent in availing itself of such temptation. Warnings are not enough to make the premises reasonably safe. The material should be stacked so, with the knowledge that the premises will be probably so used *in spite of warnings and precautions* of the lot owner, that the children playing thereabout will not be subjected to the hazards of falling timbers and material insecurely put up. The ordinance in question did not license appellant to set a dead-fall in the street to catch unwary children, mischievously or prankishly wandering within the forbidden zone. The law is, on the contrary, that the builder must anticipate their presence with a knowledge of their nature, and provide against accident to them *as far as may reasonably be within his power*. The instinct of humanity fathers this rule of the law," (emphasis added).

The instructions used by the trial court in that case are set forth at large and approved in the opinion. See Stanley's Instructions to Juries (2d ed.), § 604.

In Hermes' Adm'r v. Hatfield Coal Co., 1909, 134 Ky. 300, 120 S.W. 351, 352, 23 L.R.A.,N.S., 724, where a child climbed a ladder to an abandoned coal chute and was killed when he fell into the chute, the court held the principle of the Bransom case, supra, to be inapplicable, but in so doing made the distinction that if the danger had been latent or concealed it would have been otherwise:

"If the rounds of the ladder had been so arranged as to break under the weight of the infant climbing upon it, and thus caused his injury, the two cases would have been similar. * * * If the ladder maintained by the appellee herein had been unsafe for the purpose for which it was used, and the climbing infant had been precipitated to the ground and injured by the breaking of one of the rounds, then the case at bar would have fallen within the principle announced in Bransom's Adm'r v. Labrot."

■ The distinction thus drawn was recognized in Fourseam Coal Corp. v. Greer, Ky.1955, 282 S.W.2d 129, 131: "Throughout the Kentucky cases, there seems to run the thread of thought, sometimes not clearly expressed, that in order for a structure or condition to constitute an attractive nuisance there must be something in the nature of a hidden or latent danger—a danger that children ordinarily would not recognize or appreciate." The opinion quotes Fain v. Standard Oil Co. of Kentucky, 1940, 284 Ky. 561, 145 S.W.2d 39, 40, wherein the apt expression, "some unexpected development or happening," was used to describe the nature of accidents resulting from latently dangerous conditions.

"The character of the danger, as open and obvious, or hidden and latent, is an important consideration. The doctrine of attractive nuisance, it has been said, is limited in its application to cases where the danger is latent and affords no basis for a recovery where

the injury complained of was produced by a peril of an obvious or patent character." 38 Am.Jur. 817, (Negligence, § 151).

The various decisions from this jurisdiction upon which appellees rely, Jarvis v. Howard, 1949, 310 Ky. 38, 219 S.W.2d 958 (boy playing "follow the leader" fell while jumping from a coal loading ramp to a coal car); Guelda v. Hays & Nicoulin, Inc., Ky.1954, 267 S.W.2d 935 (boy slipped and fell on the muddy basement floor of a building under construction); Fourseam Coal Corp. v. Greer, Ky.1955, 282 S.W.2d 129 (boy fell from a coal tipple); Coon v. Kentucky & I. T. R. Co., 1915, 163 Ky. 223, 173 S.W. 325, L.R.A.1915D, 160 (boy fell from a railroad viaduct); Thompson v. Cumberland Telephone & Telegraph Co., 1910, 138 Ky. 109, 127 S.W. 531 (boy in falling from a telephone pole got his finger caught in the exposed prongs of a guy wire); Ice Delivery Co. v. Thomas, 1942, 290 Ky. 230, 160 S.W.2d 605 (boy fell from an ice delivery truck); McMillin's Adm'r v. Bourbon Stock Yards Co., 1918, 179 Ky. 140, 200 S.W. 328, L.R.A.1918C, 682 (boy fell into cattle dip); Greater Louisville First Federal Savings & Loan Ass'n v. Stone, Ky.1951, 242 S.W.2d 739 (child injured by grasping hot radiator pipe), and the various standing railroad car cases, illustrate the rule of nonliability where the danger is open to observation. In Latta v. Brooks, 1943, 293 Ky. 346, 169 S.W.2d 7, where a child picked up unslaked building lime from a wheelbarrow in a garage and threw it into the eyes of another child, it was held that the attractive nuisance doctrine did not apply because the unslaked lime was so commonly used and was not a dangerous substance (thereby rendering the accident unforeseeable) and also because the proximate cause of the injury was the independent, intervening act of the child who threw the lime. On the other hand, in Gnau v. Ackerman, 1915, 166 Ky. 258, 179 S.W. 217, the doctrine was applied to a situation where a mortar bed of slaking lime (a dangerous substance) had been made in the center of a pile of sand, causing severe injuries to a boy who came to play in the sand.

In the case before us it is clear that the concrete block column with bolts conveniently protruding from it was an attractive object to small boys. Otherwise it would not have attracted 9 year old Ronnie Goben. It was dangerous, else it would not have fallen. To children especially, with their inexperience and immaturity of judgment, we cannot avoid the conclusion that the danger was concealed. Had the boy merely fallen or jumped from the pier the principle of the cases cited by appellees would apply. But the "unexpected development" occurred (cf. Fain v. Standard Oil Co. of Kentucky, supra). The column itself broke up and fell. It had looked sturdy and strong to Mrs. Lucas and Mrs. Hays. To the defendant Winer himself, an experienced garage builder, "it looked pretty solid and substantial" and "there was nothing about it that would indicate that it would fall over if somebody climbed up on it." In view of all this testimony by the adults a jury might well choose to discount the little plaintiff's own remark that he "just wanted to see if it was sturdy enough to climb it."

From the testimony of the masonry subcontractor, Cole, as to the precautions taken from time to time to prevent such a structure from being blown down by the wind we think also that the jury might well have determined (a) that danger of its falling from its use by children was equally foreseeable and (b) that security measures available to the defendants would not have been so burdensome as to be out of proportion to the risk involved.

■■ That the condition would be dangerous only in the event of an improper use of the structure makes no difference if such a use ought reasonably to have been anticipated. Cf. 38 Am.Jur. 817 (Negligence, § 151). Whether it could reasonably have been foreseen and provided against is, under the facts of this case, a factual question for

the jury to determine. If the jury decides that question in the affirmative, the legal duty of the persons who created and were in control of the situation was to do what a reasonable and prudent person in the exercise of ordinary care would have done to guard against it.

The fact that we are dealing with a "construction" job does not put the case in a special category. It would be just as wrong to exempt all construction projects from the so-called "attractive nuisance" doctrine as it would be to say that builders are insurers against all accidents involving children on the premises under construction. Whether the situation is one that presents a jury question must depend on the facts of the particular case. We conceive this to be a borderline case, and, the question being close, conclude that the question of negligence was for the jury to determine.

■■■■ The argument is made that the contractor, Sidney Winer & Co., is not liable for the negligence (if any) of its subcontractor, Cole, citing American Sav. Life Ins. Co. v. Riplinger, 1933, 249 Ky. 8, 60 S.W.2d 115, an automobile accident case. If the contractor's responsibility rested strictly on the theory of *respondeat superior* this point would bear consideration. In this case the fact that the contractor had control of the construction project, and that its principal representative visited the premises, observed the situation as it stood prior to the accident, and had the opportunity and responsibility to take such preventive measures (if any) as the jury believes a reasonably prudent man should be expected to take under similar circumstances, makes the relationship between it and the subcontractor immaterial. Nor does it make a difference that no children actually were present at the very moment of this visit (which may have been during school hours). In a closely built-up residential neighborhood children are as much a part of the natural scene as grasshoppers. Their intrusive appearance upon and around the unenclosed premises of such an area is

to be expected. The jury question goes to whether ordinary care required the further anticipation that a child might play upon or climb upon the column and, if so, whether the resulting accident and injury could reasonably have been foreseen and prevented. It is likewise immaterial that the premises were under the technical possession and control of the owners, the Lucases, who are not parties to this action. A person who is responsible for creating or maintaining a dangerous condition on the premises of another may be held liable for an injury sustained by a child as a result. 38 Am. Jur. 817, 824 (Negligence, § 155); Carter v. Livesay Window Co., Inc., Fla.1955, 73 So.2d 411; Kahn v. James Burton Co., 1955, 5 Ill.2d 614, 126 N.E.2d 836.

■■■■ It is insisted that plaintiff was negligent as a matter of law. On the contrary, the presumption is that a child between the ages of 7 and 14 years does not have sufficient judgment to be capable of contributory negligence. See Baldwin v. Hosley, Ky.1959, 328 S.W.2d 426, wherein the rule is discussed at length. This plaintiff's testimony on the witness stand, 14 months after the date of the accident, indicated that he was intelligent. But native intelligence and *judgment* are two different qualities, especially at any early age, and the test of the legal capacity for negligence is on the matter of judgment alone. On the retrial of this case it will be the task of the trial court to determine from the evidence whether the presumption of noncapacity as of the time of the accident has been sufficiently rebutted to warrant the question of plaintiff's capacity for contributory negligence to be submitted to the jury. Since, therefore, it cannot be said as a matter of law (as was said in Dixon v. Stringer, 277 Ky. 347, 126 S.W.2d 448) that he had the capacity, it follows *a fortiori* that he certainly cannot be held negligent as a matter of law. Newton v. Wetherby's Adm'x, 1941, 287 Ky. 400, 153 S.W.2d 947, does not reach the question of contributory negligence and is not germane to this phase of the case.

The trial court having erred in directing a verdict for the defendants, the cause is reversed and remanded for further proceedings consistent with this opinion.

MONTGOMERY, C. J., and STEWART and MOREMEN, JJ., dissent.

STEWART, Judge (dissenting).

I dissent from the majority opinion because, broadly speaking, it will have the effect of tending to make the owner and builder of improvements under construction on real estate insurers of the safety of young children who trespass thereupon. Then, too, this opinion, if it stands, will extend the attractive nuisance doctrine to limits that are inconceivable in their ultimate implications, whereas the announced policy of this Court has been to restrain instead of expand this doctrine, particularly where the customary use of real property is involved. On this proposition the following language from Goss v. Shawnee Post, etc., Ky., 265 S.W.2d 799, 800, should be noted:

> "The tendency of our Court is to restrict rather than to enlarge the attractive nuisance doctrine, Ice Delivery Co. v. Thomas, 290 Ky. 230, 160 S.W.2d 605, and to exclude from its application such things as walls, fences, simple tools and appliances and conditions arising from the ordinary use of property, else the ownership of real estate would become a burden instead of a benefit."

The majority opinion refers to the structure which young Goben pulled over on himself as "a column". Actually, it could well be considered as part of a *wall*, since it forms a necessary component of the front portion of the garage. If it be regarded as a wall, and I believe it should be so classified, such a fact would bring it within the exclusionary language of the Shawnee Post case. Undoubtedly the structure as built falls into the category of those "conditions arising from the ordinary use of property", with the result that the attractive nuisance doctrine is ruled out as an applicable principle.

I also do not subscribe to the theory that the concrete block structure with bolts protruding therefrom at intervals (a necessary condition incident to the construction of the garage) constituted an invitation to small boys to use them, so as to make appellees liable to appellant who attempted to climb up the bolts and was injured. No Kentucky case is cited to support such a view. On the contrary, a Texas case, Simonton v. Citizens' Electric Light & Power Co., 28 Tex.Civ.App. 374, 67 S.W. 530, 532, held no recovery could be had by a child who climbed up an electric light pole by means of spikes driven in the pole from a point near the ground up to a point near the top. The child was injured by a fall, and the Court of Civil Appeal of Texas, addressing itself to the attractive nuisance doctrine sought to be invoked there, said:

> "Where the owner makes use of his property as others ordinarily do throughout the country, there is not, in legal contemplation, any evidence from which a court or jury may find that he had invited the party injured thereon, though it be conceded that his property was calculated to, and did, attract him. * * * *"

The opinion attempts to buttress its position that the structure was designed to lure small boys into a hazardous situation with two cases involving stacked lumber and one involving stacked I-beams. In all of these cases, all of them having been decided more than fifty years ago, the materials were placed out in the street where children passed continually or, as in one case, in a lot resorted to as a playground by small boys and girls. In two of these cases (Bransom's Adm'r v. Labrot & Graham and Louisville R. Co. v. Esselman), the lumber and I-beams, it was emphasized, were piled negligently so that they would reasonably be calculated to become loose

and fall if children climbed over or upon them. In the other, although the lumber was found not to have been negligently stacked, the owner of it was held to be guilty of an actionable wrong because liability could attach where "such an object of danger to very young children" was left accessible to them and unguarded in a public street. Attention is also directed to the fact that this last-mentioned opinion is counter to the current view of authority in this jurisdiction, since it allowed a child to recover by reason of falling from an immobile structure. See Fourseam Coal Corp. v. Greer, Ky., 282 S.W.2d 129.

As regards the case at bar, the boy who was hurt was a trespasser at the time he was injured, and he lost his two fingers while attempting in a spirit of bravado to scale a structure that had been erected in the manner usual to the construction of such an object and with proper care as to workmanship.

A case more in line with the one under discussion was Witte v. Stifel, 126 Mo. 295, 28 S.W. 891, 893, 47 Am.St.Rep. 668. There a seven-year-old boy was killed when a large stone placed over the top of a window frame of a cellar, about three or four feet from the surface of the ground, fell on him when he tried to draw himself up by taking hold of the top of the stone. The latter had not been set in mortar and was loose. In denying a recovery in this case, the Supreme Court of Missouri, after finding that the boy was a trespasser, had this to say about the application of the attractive nuisance doctrine to the facts:

"No inducement or invitation, implied or otherwise, had been held out to him; but for his own amusement he was attempting to draw himself up, by placing his hands upon the stone, which, by reason of the pressure thereon, fell upon him, and killed him. The defendants owed him no duty, except the negative one not to wantonly or maliciously injure him. The deceased had left the sidewalk, and stepped over

the bounds and passed the limits to which he was restricted by the street and sidewalk; and therefore his case does not come within the rule which requires one person to so protect a building upon his own premises, or of which he may be in control, which is dangerous to others, passing along upon a public street."

The majority opinion takes the view that the builder of the structure should have employed certain security measures in order to protect children who might intrude and play on the structure as young Goben did. To require such a practice would make building costs, which are mounting skyward by the hour, well nigh prohibitive for the average person. I submit that such a rule should not be laid down as the law in Kentucky.

While there is some authority holding that the applicability of attractive nuisance or a related doctrine is a question for the jury, I think the better view is expressed in Peters v. Bowman, 115 Cal. 345, 47 P. 598, 599, 56 Am.St.Rep. 106, as follows:

"But the owner of a thing dangerous and attractive to children is not always culpable, and therefore is not always liable for an injury to a child drawn into danger by the attraction * * *. The facts being undisputed, it is the province and the *duty of the court to decide*, as a matter of law, whether a defendant has been guilty of culpable negligence." (Emphasis added.)

In the case at bar, the facts were not in dispute in regard to the occurrence of the accident. Under the evidence, the trial judge correctly took this case from the jury and determined as a matter of law no recovery could be had. I would uphold the ruling of the lower court which directed a verdict for the appellees.

I am authorized to state that MONTGOMERY, C. J., and MOREMEN, J., join me in this dissent.