ALBERT BERG ET AL., RESPONDENTS, v. JOHN GOSLING, APPELLANT.[*]

Kansas City Court of Appeals.    June 27, 1927.

[*]Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2708, p. 764, n. 80; Trial, 38Cyc, p. 1517, n. 62.

*J. B. McGilvray* for respondent.

*Lathrop, Morrow, Fox & Moore, Winston H. Woodson* and *Frank L. Barry* for appellant.

BLAND, J.—This is a suit for wrongful killing of plaintiffs' nine-year-old boy. There was a verdict and judgment in favor of plaintiffs in the sum of $3000 and defendant has appealed.

The facts show that plaintiffs' son was killed on May 23, 1924, while walking upon a window frame left by defendant on a playground of the Allen School, situated at 42nd and Summit streets in Kansas City, Missouri. At the time in question defendant was building a brick annex to the original school building under a contract with the School Board. The old school building was located on the east side of the school property. On the north side of the school grounds and northwest of the original building were two frame temporary school buildings, facing the south. The annex that defendant was building was located west of the original school building and faced south on 42nd street. Defendant had two small frame buildings a few feet apart to the west of the new building or annex; one, an office building and the other a building for the storage of cement, the former building being south of the latter and near 42nd street. There was a playground in front of the two temporary frame buildings. This playground had been fenced off by the defendant from the place reserved by him for the piling of material, the fence running along the west side of the two temporary frame buildings erected by him. The west side of these buildings constituted the fence in part. This left a frontage of eighty feet running east and west on 42nd street in front of the two temporary frame buildings for a playground for the children. The depth of this playground is not shown in the testimony but from the photograph introduced in evidence it evidently was not of great depth. There were two other playgrounds on the premises but their size is not shown in the testimony. About five hundred children between the ages of eight and twelve years attend the Allen school, nearly one hundred of them being housed in the two temporary school buildings.

Notwithstanding a part of the premises had been fenced off, apparently to prevent the children from coming in contact with defendant's materials, he nevertheless piled some material on the playground in question, consisting of a few boards along the fence and a pile of tiling two feet high running fifteen feet west from his office building. About two weeks before the death of plaintiffs' son a sash and door company had delivered some window frames upon the premises, which were piled on the west side of the office building. About four or five days before the death, carpenters, being ready to use some of the smaller frames, which were piled between two of the larger frames and the side of the office building, moved the two larger frames and leaned them against the west side of the cement

228

shed, one on top of the other, placing the bottoms of these large frames two or three feet from the side of the shed. These frames weighed from 250 to 275 pounds and were about nine by twelve feet in size.

The evidence shows that these window frames had sloping sills, intended to permit rain water to readily run off when they were in position in the building. There was testimony that the frames were placed against the cement shed so that the bottom of the window frame rested upon its pointed or slanting edge, which, no doubt, made the frame more easily tipped over than if it had been placed with the under side up.

On May 23, 1924, plaintiffs' son and another boy by the name of Alvin Hedberg, were on their way to the Allen school. The two boys attended school in the two temporary buildings. They were late. The Hedberg boy testified that the last bell had rung and as they approached the school he said to deceased "Let's hurry to school," so they began to run and, there being a muddy place in front of the window frames, they proceeded to walk across the lower part of the outer frame. The Hedberg boy was in front and when he reached a point near the north side of the frame, plaintiffs' son was nearer the middle and the frame started to tilt and fall to the west. The Hedberg boy being near the north side of the frame, jumped to the north and out of the way but plaintiff's son was unable to get out of the way and the frame fell, striking him and killing him almost immediately.

Defendant's foreman testified as to the position of the window frames and as to how long they had been on the ground; that he knew children played on the playground where the window frames were placed.

The principal of Allen School, who testified for the defendant, stated that she had previously gone to each room in both the original and temporary school buildings and warned the children not to play around the building material on the premises and cautioned them to keep away from dangerous places; that during the recesses and before school began in the morning she and the other teachers were on the grounds watching the children and supervising their safety; that the teachers watched the children constantly because the latter always do what they are told not to. However, the witness, Alvin Hedberg, testified that the principal merely told the children "not to go inside the fence."

The negligence alleged in the petition was that defendant—". . . through his employees or agents negligently and carelessly placed certain large window frames of exceptionally great weight against a temporary building which the defendant had placed upon the play grounds used by said children, and that the defendant through his agents, servants and employees negligently and carelessly set or placed said window frames in (an approximately) perpendicular posi-

tion, and in such manner that said window frames were apt, or would fall (if came in contact with or stepped upon by children playing on said ground)."

It is insisted by the defendant that his instruction in the nature of a demurrer to the evidence, offered at the close of the testimony, should have been given for the reason that the evidence discloses no negligence on the part of defendant, citing in support thereof the case of O'Hara v. Gas Light Co., 244 Mo. 394.

We think there is no merit in the contention. This case is unlike the O'Hara case. In that case a heavy iron pipe was placed upon a street, the surface of which was practically level, and in a perfectly safe position. The pipe was caused to roll by children playing upon it, resulting in its striking and killing another child for whose death the suit was brought. The case turned largely upon the attractive nuisance theory, which the court held did not apply, and also held that defendant was not liable under the independent contractor doctrine. It then stated, l. c. 410, that defendant would not have been liable in any event because the pipe was moved by a cause that could not have been reasonably anticipated by the defendant. In the case at bar defendant left the window frames on the children's playground, a place where he had no right to put them. In the O'Hara case the company had a perfect right to place the pipe on the street and it was placed in a safe position while in the case at bar the frames could have been placed flat upon the ground without danger of their being tipped over.

The evidence shows that defendant knew of all the conditions present and the evidence of defendant's witness shows the inclination of children to go upon such material as these window frames (and we would know this without such evidence) yet he left the frame in question on the children's playground in a position so that the weight of two small boys would tip it over. There is no question but that the defendant, in view of the fact that small children were to be dealt with, was negligent in placing the window frames where and as they were placed and that he could have anticipated such an occurrence as the one that actually happened. [Earl v. Crouch, 16 N. Y. Supp. 770, affirmed 131 N. Y. 613; Bransom's Admr. v. Labrot, etc., 81 Ky. 638; Kreiner v. Straubmuller, 30 Pa. Sup. Ct. 609.]

Some mention is made in defendant's brief concerning the fact that the children were warned to keep off the material but even if this were true, what it has to do with defendant's negligence we are unable to see. There is no evidence that the warning was done by any agent or representative of the defendant or as the result of any request made by him or, in fact, that defendant knew anything about it. The only bearing that the warning, if given, could have upon the situation would be upon the question of contributory negligence and no such question is raised in this court by the defendant.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## ON MOTION FOR REHEARING.

BLAND, J.—While there is no direct testimony that the fence erected between the building being constructed and the children's playground, was for the purpose of separating the place where the work of construction of the building was in progress, including the place where the material was piled, from the playground, an inference from the testimony may be drawn to this effect. The evidence shows that all but a small portion of the material going into the building was stored on the east side of the fence; that the playground was "kept quite clear of all building material" and that after deceased was killed the window frames in question were removed and placed between the cement shed and the office, or east of the fence and off of the playground.

While the record is not as clear as it might be upon the question as to the purpose of the erection of the fence in question, taking all of the facts a clear inference arises that the purpose of the fence was to keep children away from dangers incident to the construction of the building, which, of course, would include those arising from the storage of various kinds of heavy material which might cause injury to children should they come in contact therewith.

The jury were entitled to take all the testimony, together with every reasonable inference that might be drawn therefrom, in favor of the plaintiff and, in considering a demurrer to the evidence, we must view the testimony from the same standpoint. We are, therefore, of the opinion that defendant stored the window frames in question at a place reserved for the children to play.

The motion for a rehearing is overruled.